[No. 1659–3. Division Three. May 24, 1977.]

THE STATE OF WASHINGTON, *Appellant,* v. JAMES E. BUTLER, *Respondent.*

C. J. Rabideau, Prosecuting Attorney, for appellant.

John G. Ziegler, for respondent.

BUCKLEY, J.*—On June 16, 1972, the defendant pleaded guilty to being a felon in possession of a pistol (RCW 9.41-.040) and was sentenced to confinement for not more than 10 years in a state correctional institution. Subsequently, he filed a petition for post–conviction relief. Pursuant thereto, the Court of Appeals ordered the matter to be remanded to the superior court for hearing. As a result of the hearing held April 1, 1975, the trial court found: that during plea negotiations the habitual criminal statute[1] was mentioned; that the defendant believed the reference was to the second paragraph thereto, the so–called "big habitual" portion; that the prosecuting attorney could not have brought an action under the second paragraph; and that, therefore, the defendant's plea of guilty was a product of deception and was coercive. Finding the plea not voluntary, the trial court vacated the judgment and sentence. We reverse.

---

*Judge Sidney R. Buckley is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

[1] RCW 9.92.090:
"Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been twice convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be adjudged to be an habitual criminal and shall be punished by imprisonment in the state penitentiary for not less than ten years.

"Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which

On September 4, 1958, defendant's probation was revoked and judgment and sentence signed finding the defendant guilty of burglary in the second degree and sentencing him to confinement in the Washington State Reformatory for a term of not more than 15 years. During the period between that date and April of 1972 he was only sporadically free of incarceration. He was revoked from parole five times.

In April of 1972, the defendant was charged with the offense of second–degree assault. Pending the trial on that matter, the defendant was convicted in police court of resisting arrest, assault, disorderly conduct and destruction of property, was sentenced to 180 days in jail on each of the four convictions, and was charged with the present charge under RCW 9.41.040 of being a felon in possession of a pistol.

During plea negotiations, the prosecuting attorney informed defense counsel: "that it looked like Mr. Butler might have a problem with habitual criminal charges here if this has to go to trial." During discussions, defense counsel informed his client:

> I felt it was a strong case and that he should give some serious thoughts to pleading guilty to it in exchange for some other things, dismissal of the first charge and hopefully some favorable treatment in some other places.
> . . .
> . . . if we didn't make a deal here that a habitual criminal was a very real possibility.
> . . . that if he went to trial and was convicted of even one more felony that he could—it could involve some enhanced penalties for him.

It was the defense counsel's recollection that: "the habitual criminal in our conversations was brought up very collaterally, much more collaterally than in most cases when it has

---

under the laws of this state would amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state penitentiary for life."

come up." The defendant and defense counsel did not discuss either the nature of the habitual criminal charge or the increased penalty which could result therefrom.

On June 16, 1972, the prosecuting attorney, the defendant and his counsel appeared in open court. The prosecuting attorney presented to the court the result of the plea negotiations: In exchange for the defendant's guilty plea for being a felon in possession of a pistol, the State would recommend that the second–degree assault charge be dismissed; that the defendant be sentenced to the Division of Institutions for a period of not more than 10 years; and that the prosecuting attorney would recommend a 3–year minimum term to the Board of Prison Terms and Paroles; and that the prosecution would cooperate with defense counsel in attempting to dispose of the police court charges, including suspension of the jail sentences. Although not included in the plea bargaining, the prosecuting attorney agreed to cooperate with defense counsel in obtaining help for the defendant with his alcohol and his psychological problems. No mention was made of the habitual criminal possibilities or any agreement that the parties might have with respect thereto.

After the defendant pleaded guilty, the court asked the defendant if his plea was of his own free will and volition and if he realized that in all probability the court would sentence him to the state penitentiary. To both questions the defendant answered, "Yes, sir." After determining the defendant had been in possession of the pistol, the court went over the defendant's constitutional rights with him, and being informed by the defendant that he understood those rights and was waiving all of them, the court accepted the plea of guilty.

The plea bargaining, as recited to the court, was in all respects observed. The second–degree assault charge was dismissed, as were the police court charges. The prosecuting attorney recommended to the Board of Prison Terms and Paroles that the defendant's minimum sentence be placed at 3 years. He further recommended psychiatric counseling,

alcohol counseling and antibuse treatment for the defendant. No habitual criminal charge was filed against the defendant.

The care used by the trial judge in accepting defendant's plea of guilty surpassed any rule or law which, at that time, had been pronounced. By the procedure followed, the defendant's constitutional rights were properly protected. *Henderson v. Morgan*, 426 U.S. 637, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976); *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973); *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969); *McCarthy v. United States*, 394 U.S. 459, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1969); *Woods v. Rhay*, 68 Wn.2d 601, 414 P.2d 601 (1966). Failure to specifically follow the later adopted CrR 4.2 and to ask all the questions set forth in that rule does not render the process followed incorrect nor the plea accepted involuntary. With few exceptions (not applicable here), defendant's plea is subject to the rules and law then existing, *McMann v. Richardson*, 397 U.S. 759, 25 L. Ed. 2d 763, 90 S. Ct. 1441 (1970); nor does CrR 4.2 have retroactive application.

> To hold out the possibility of invalidating countless guilty pleas months and years after their acceptance unquestionably would have an adverse impact on the administration of justice in Washington.

*Woods v. Morris*, 87 Wn.2d 501, 514–15, 554 P.2d 1032 (1976).

The record discloses that before accepting his plea, the court determined that the defendant was validly waiving those constitutional rights waived or abandoned by such a plea. The defendant knowingly and intentionally relinquished his right to a jury trial, his right to require the prosecutor to bring witnesses, his right to cross-examine and confront the witnesses, and his right to remain silent during the trial or to testify if he so chose. *McCarthy v. United States, supra.*

The question of "waiver," however, is distinct from the question of "voluntary." The trial court determined that

the defendant's plea was an intelligent admission of guilt and that he knew the possible and probable consequences of pleading guilty. Thus, the defendant voluntarily pleaded guilty to the extent that he admitted all the elements of the criminal charge with the knowledge of the possible and probable consequences of pleading guilty. But certainly this does not answer the whole question of whether the defendant's act was voluntary.

As used in criminal cases, "voluntary" is easier to recite than define and probably more often recited than considered. "Voluntariness" reflects an accommodation of complex values between the rights of society and the rights of the individual wherein neither security nor liberty is sacrificed. *Schneckloth v. Bustamonte, supra.* Perhaps it is a slight misnomer to say a person voluntarily pleads guilty to a crime if the inference be that the person desired to plead guilty. We sense that most people would rather be doing something else. The measure certainly is not that which a person wants or desires to do.

> The criminal process, like the rest of the legal system, is replete with situations requiring "the making of difficult judgments" as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose.

(Citation omitted.) *McGautha v. California,* 402 U.S. 183, 213, 28 L. Ed. 2d 711, 91 S. Ct. 1454 (1971).

The alternative may be unpalatable and a difficult choice, but this does not render the plea involuntary. The State's involvement in actual or threatened physical harm or mental coercion overbearing the will of the defendant renders a plea involuntary. *Brady v. United States,* 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970). Within the perimeters of this case was a plea involuntary where the defendant may have been under a mistaken belief as to the law and/or the intention of the prosecuting attorney which

may or may not have involved a responsible officer of the state?

The first and foremost question is the involvement, if any, of the State. At the conclusion of the remand hearing of April 1, 1975, the court entered findings of fact and conclusions of law which, at least indirectly, indicated an involvement by a responsible representative of the state and further indicated the defendant's belief concerning a possible habitual criminal charge. If the court's findings are supported by substantial evidence, they must be accepted as verities. *State v. Bunch,* 2 Wn. App. 189, 467 P.2d 212 (1970).

The record fails to support the inference in the findings that the prosecuting attorney made any reference to the habitual criminal statute in the presence of the defendant. Although some discussion was held between the prosecuting attorney and defense counsel in the presence of the defendant, the record fails to suggest that any reference was made to the habitual criminal statute or possible habitual criminal charges during such discussions. Certainly, the defendant did not rely on any statement made by the prosecuting attorney in his presence. He even denied that any plea negotiations between the prosecuting attorney and his counsel were conducted in his presence. Further, the finding that the defendant had not heard of the "little bitch" at the time he entered his plea is unsupported by any testimony. Lastly, the court's conclusion that "all of the parties to the plea bargaining process believed that the mention of the habitual criminal proceedings was a reference to the 'big bitch'" proceedings is not based on any testimony to that effect, but rather on the fact that the defendant had been convicted or was charged with three different felonies. The record does not support the supposition that the defendant was unaware of both paragraphs of the habitual criminal statute, nor does it support the supposition that the parties were referring to the second paragraph thereof.

The record does support those findings and conclusions to the effect that: the defendant believed that if he were convicted of both the felon–in–possession–of–a–pistol charge and the second–degree assault charge, the possibilities were strong that he would be charged under the second paragraph of the habitual criminal statute; and that he would have refrained from pleading guilty if he had known that he could not have been charged within the "big bitch" section.

Implicit in the court's findings and summarized in the court's conclusions is that the defendant must fully understand the law; and that in the event he is confused or mistaken and such confusion or error is not removed by his counsel, the prosecution has a duty to do so even though the defendant has never verbalized this confusion or error. This places far too heavy a burden on the prosecution and far too little a burden on the defendant and his counsel. In the event the defendant was not represented by counsel, the situation could well be different. Under such circumstances, the responsibility of the prosecution and the court to see that the defendant is properly informed is much greater. The possibility of finding coercion is easier, *Fontaine v. United States,* 411 U.S. 213, 36 L. Ed. 2d 169, 93 S. Ct. 1461 (1973), but even in the absence of an attorney, a defendant has some duty to request a clarification. To hold otherwise would place in doubt every guilty plea from a defendant who asserted his right not to have counsel. It is not possible, nor is it the duty of the court or the prosecution, to attempt to determine the possible myriad of misapprehensions which may be hidden in the mind of the defendant.

Also implicit in the trial court's holding is the duty of the prosecuting attorney to use the utmost care in the language which he uses in discussions with defense counsel outside the presence of the defendant under the penalty of reversal if this fellow professional, without inquiry, misinterprets some term of law used. Not only is it unrealistic to require formal, precise language by the prosecuting attorney to

avoid all possible ambiguities, but further, to require precise memory thereof 2 or 3 years after the happening reaches mythical proportions. Beyond the defendant's power of knowledge and intelligence, the duty to protect the defendant lies first and foremost with his attorney. If defense counsel was confused as to which subsection of the habitual criminal statute the prosecuting attorney referred, he at least had the duty to inquire. His failure to request clarification did not thereby place any additional duty on the prosecuting attorney nor render involuntary a guilty plea later taken.

The record does not support an assertion of confusion on behalf of the defense counsel nor does it indicate he misadvised the defendant. He advised the defendant "that a habitual criminal was a real possibility"—"that if he went to trial and was convicted of even one more felony that he could—it could involve more enhanced penalties for him." He did not inform the defendant that the enhanced penalty would be a life sentence, that is a minimum of 15 years, under the second paragraph of the statute, rather than a minimum of 10 years under the first paragraph, nor did the defendant inquire what the "enhanced penalties" would be. Defendant's uncommunicated mistaken belief does not render his plea involuntary.

Inherent in any plea of guilty is the risk of ordinary error in the assessment of the facts and law by the defendant or his attorney, even though that law be of constitutional dimensions. Such risk neither removes the intelligent nature nor the "voluntariness" of the plea if the advice given is not grossly in error, that is, that the advice is within the range of competence required of attorneys representing defendants in criminal cases. This is the holding of the *Brady* trilogy: *Parker v. North Carolina,* 397 U.S. 790, 25 L. Ed. 2d 785, 90 S. Ct. 1458, 90 S. Ct. 1474 (1970), where a 15–year–old boy who had been sentenced to life imprisonment alleged his attorney was wrong in his assessment of the admissibility of his confession; *Brady v. United States,* 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463

(1970), wherein the defendant would not have pleaded guilty "but for" existence of a statute containing a death penalty provision which was later declared unconstitutional; and *McMann v. Richardson, supra* at 770, 774, involving separate cases alleging coerced confessions.[2]

■ We find no state involvement in this case. With perhaps one exception, in order to find sufficient state involvement to render a guilty plea involuntary, a responsible state official (the prosecuting attorney or, in some instances, the court itself) must indicate an intention or agreement to do or not to do some act with respect to sentencing. The prosecutor's mistaken view of the law does not fall within this category, nor does his failure to remove an ambiguity. In any event the defendant must rely in good faith on a responsible public official's statement of intent or agreement.

Moreover, even if we were to consider defendant's affidavit and give it full credence, a case for relief under the

---

[2]*McMann v. Richardson, supra* at 770–71:

"In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession. Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases."

*McMann v. Richardson, supra* at 774: "It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act."

*Tollett v. Henderson,* 411 U.S. 258, 267, 36 L. Ed. 235, 243, 93 S. Ct. 1602 (1973): "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standard set forth in *McMann.*"

circumstances is still lacking. As defendant recognizes, purported misrepresentations by defense counsel that a specific sentence will be imposed are insufficient to vitiate a plea entered in reliance thereon; there must also be apparent substantial corroboration of or connivance in such misrepresentations by a responsible public officer, relied on in good faith by the defendant, and the misrepresentations must actually operate to preclude the exercise of the defendant's free will and judgment.

*People v. Reeves,* 64 Cal. 2d 766, 776–77, 415 P.2d 35, 41, 51 Cal. Rptr. 691 (1966).

This would seem to be the ground for the holding in *State v. Mitchell,* 2 Wn. App. 943, 472 P.2d 629 (1970), where the court indicated that a threat by the prosecutor to prosecute the defendant under the habitual criminal act was deceptive if the prosecuting attorney had no basis for such an expression of intention. This was more than a mistaken view of law but rather an expression of a coercive intention irrespective of what the law might be.

One exception that may exist is suggested in *Wood v. Morris, supra.* When the court knows that the defendant is mistaken as to a substantial matter, the court's inherent duty to insure the fulfillment of justice requires that the court inform the defendant that his belief is in error.

■■ Lastly, it is suggested that the first paragraph or subsection of RCW 9.92.090, the so–called "little bitch" provision, was repealed by implication. Repeals by implication are not favored. *State Liquor Control Bd. v. State Personnel Bd.,* 88 Wn.2d 368, 561 P.2d 195 (1977). We find neither legislative intention to do so nor any necessity for such repeal by implication. The fact that RCW 9.95.010 mandates the court to set only the maximum sentence does not suggest a repeal of any part of RCW 9.92.090. Provisions of RCW 9.92.090 apply to the Board of Prison Terms and Paroles. *State v. Mitchell, supra,* assumes that both paragraphs of RCW 9.92.090 are in full effect. By implication, *State v. Ashker,* 11 Wn. App. 423, 523 P.2d 949 (1974), so held and we agree.

A mistaken belief as to law, fact or intention of the prosecuting attorney or court would not alone render a defendant's guilty plea involuntary. Even if this mistaken belief were made known to his attorney, a later plea of guilty would not necessarily be rendered involuntary. The plea would be involuntary only if his attorney, in advising or in failing to advise him, committed a serious dereliction of duty. Mistaken beliefs as to the intentions of the prosecuting attorney communicated to the prosecuting attorney, if uncorrected by him, would be deceptive, might well be coercive, and might well render a plea involuntary. Under the facts of this case, at most, the defendant had an unexpressed mistaken belief on a material matter as to the possible intention of the prosecuting attorney. This is insufficient to render his plea involuntary.

The order of the court on the remand hearing vacating the judgment and sentence is hereby reversed. The judgment and sentence of June 16, 1972, is hereby reinstated.

GREEN and McINTURFF, JJ., concur.

Petition for rehearing denied June 28, 1977.

Review denied by Supreme Court December 16, 1977.