IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 80227-5-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| JAMALL SHONREE BAKER, | |
| Appellant. | |

SMITH, J. — Jamall Baker pleaded guilty to first degree murder in 2010 after being found competent to stand trial. He appealed his conviction almost a decade later, contending that cognitive impairments and memory loss had affected his understanding of his right to appeal. We granted his motion to enlarge the time to appeal. Because we find his guilty plea was knowing and voluntary, we affirm but remand for Baker to be resentenced under the 24 to 48 month community custody range in effect at the time of his crime and to strike some of the community custody provisions and legal financial obligations.

FACTS

In February 2008, Baker was arrested for the murder of Nicky Schoonover. He was then brought to the emergency room for an overdose after apparently ingesting multiple substances around the time of his arrest. In April, the court ordered Baker to be evaluated by Western State Hospital for competency. A psychologist at Western State Hospital ultimately evaluated Baker three times, and an independent psychologist also evaluated Baker in

Citations and pin cites are based on the Westlaw online version of the cited material.

January 2010. Both psychologists concluded that although Baker suffered from mental illness, he was competent to stand trial. On February 19, 2010, the court ordered that Baker was competent.

In March 2010, Baker pleaded guilty to one count of murder in the first degree. Before entering his plea, Baker was informed that this was his first strike under the "two strikes law" and that if he was convicted of one additional crime that counted as a strike, he would be subject to a sentence of life without the possibility of release. He was also informed he would face 36 months of community custody. As part of his plea, Baker stipulated that his two prior California burglary convictions were comparable to Washington crimes, making them admissible for purposes of his offender score.

The court accepted Baker's plea and sentenced him to 325 months. The court ordered 36 months of community custody and imposed various conditions, and it ordered Baker to pay a $100 crime lab fee, community custody supervision costs, and interest on all legal financial obligations. Baker appeals.

ANALYSIS

Baker challenges the validity of his plea agreement. He contends that his plea was not knowing, intelligent, and voluntary because he was misinformed about the sentencing consequences, and he contends that this misinformation constituted ineffective assistance of counsel. He also challenges his community custody term and several community custody conditions and legal financial obligations imposed by the trial court.

Validity of Guilty Plea

Baker first contends that his plea was invalid because misinformation about Washington's three strikes policy, the community custody term he was facing, and the inclusion of his out-of-state offenses in his offender score rendered his plea involuntary. We disagree. Baker also contends that we should consider this claim in light of his "fragile mental state" at the time. However, Baker does not appeal the court's findings, based on four psychological reports, that he was competent. Accordingly, we treat his competence as a verity on appeal. State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

To be valid, a guilty plea must be knowing, voluntary, and intelligent. State v. Mendoza, 157 Wn.2d 582, 587, 141 P.3d 49 (2006); see also CrR 4.2(d). "A plea is knowing and voluntary only when the person pleading guilty understands the plea's consequences, including possible sentencing consequences." State v. Buckman, 190 Wn.2d 51, 59, 409 P.3d 193 (2018). There is a strong public interest in the enforcement of voluntarily and intelligently made plea agreements. State v. Codiga, 162 Wn.2d 912, 922, 175 P.3d 1082 (2008).

In analyzing whether a defendant was informed of the consequences of their plea, we distinguish between direct and collateral consequences of the plea by asking "'whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.'" State v. A.N.J., 168 Wn.2d 91, 114, 225 P.3d 956 (2010) (internal quotation marks omitted) (quoting State v. Barton, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980)). On direct

appeal, "a defendant who is misinformed of a direct consequence of pleading guilty is not required to show the information was material to his decision to plead guilty" to have their plea withdrawn.  Mendoza, 157 Wn.2d at 589.  However, misinformation about a collateral consequence will invalidate a plea only if the defendant shows that they "materially relied on that misinformation when deciding to plead guilty."  In re Pers. Restraint of Reise, 146 Wn. App. 772, 787, 192 P.3d 949 (2008).

Furthermore, a defendant can establish that a guilty plea was involuntary or unintelligent where they relied on inadequate assistance from their attorney.  State v. Sandoval, 171 Wn.2d 163, 169, 249 P.3d 1015 (2011).  To establish ineffective assistance of counsel, the defendant must show "first, objectively unreasonable performance, and second, prejudice to the defendant."  Sandoval, 171 Wn.2d at 169.  "'The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances.'"  In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004) (quoting Kimmelman v. Morrison, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)).

1. Strike Advisement

Baker first contends that his plea is invalid because he was misinformed about the three strikes law.  Before entering his guilty plea, the court and the attorneys advised Baker that this was a first strike under the two strikes law.  In actuality, Baker's conviction was the first of three strikes because his crime did

4

not trigger the two strikes provision. Former RCW 9.94A.030(29)(a), (33)(a)-(b) (2006); RCW 9.94A.570.

Because the court and the lawyers misstated the strikes law, Baker was clearly misinformed about a sentencing consequence. However, whether he had one strike or two strikes remaining is a collateral consequence of his sentencing, because the sentencing effect depends on possible future crimes rather than being "'definite, immediate and largely automatic.'" A.N.J., 168 Wn.2d at 114 (internal quotation marks omitted) (quoting Barton, 93 Wn.2d at 305). Because Baker does not contend that he "materially relied on that misinformation when deciding to plead guilty," this misinformation about a collateral consequence does not render his guilty plea invalid. Reise, 146 Wn. App. at 787.

Similarly, Baker does not establish ineffective assistance of counsel requiring a withdrawal of the plea. While the misinformation from his counsel was objectively unreasonable and deficient assistance, Baker does not allege that he was prejudiced by this deficient assistance. Thus, Baker's plea is not invalidated by the erroneous strike advisement.

Baker disagrees and contends that Padilla v. Kentucky, 559 U.S. 356, 365-66, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), rejected the distinction between direct and collateral consequences. However, Padilla specifically addressed ineffective assistance of counsel claims in the context of deportation as a consequence of conviction. Padilla, 559 U.S. at 365. Furthermore, even after Padilla, a defendant still must show prejudice to prevail on an ineffective

assistance of counsel claim. Sandoval, 171 Wn.2d at 169. Padilla therefore does not change our analysis.

    2. Community Custody Term

Baker next contends that misinformation about his community custody term renders his plea invalid.

"Whenever any criminal or penal statute shall be amended . . . all offenses committed or penalties . . . incurred while it was in force shall be punished or enforced as if it were in force, notwithstanding such amendment . . . , unless a contrary intention is expressly declared in the amendatory . . . act." RCW 10.01.040. Under the statute in effect at the time of the crime in 2008, Baker faced a range of 24 to 48 months of community custody. Former RCW 9.94A.715(1) (2006); former RCW 9.94A.030(41) (2006) (classifying murder in the first degree as a serious violent offense); former WAC 437-20-010 (2007). However, in 2009, the legislature amended the law to impose a fixed 36-month community custody term. LAWS OF 2009, ch. 375, § 5. The legislature expressly provided that this amendment would "appl[y] retroactively and prospectively." LAWS OF 2009, ch. 375, § 20. In State v. Snedden, 166 Wn. App. 541, 544-45, 271 P.3d 298 (2012), we affirmed that the amendment applied retroactively because the legislature expressed its intention that it would do so. However, in State v. Coombes, 191 Wn. App. 241, 253, 361 P.3d 270 (2015), we held that this was an unconstitutional ex post facto law and that therefore a defendant who committed a crime before the amendment needed to be sentenced under the discretionary range.

Here, Baker was accurately informed about the law as it existed at the time of his sentencing. See State v. Kinsey, noted at 98 Wn. App. 1024, 1999 WL 1101259, at *3. (because "Kinsey was misinformed as to the meaning of the law *as it existed at the time of his plea*," there was "no unfairness or impracticality" in determining that plea was invalid on basis of later case explaining this meaning (emphasis added)). Thus, Baker's plea is not involuntary on this basis. Nor does his attorney's explanation of the law constitute ineffective assistance of counsel because it was not defective advice to describe the law as it existed. State v. Butler, 17 Wn. App. 666, 675, 564 P.2d 828 (1977) (legal advice "within the range of competence required of attorneys representing defendants in criminal cases" does not render plea involuntary).

3. Inclusion of Out-of-State Burglaries

Baker next contends that he was misadvised about the comparability of his out-of-state burglaries. However, the record does not support this conclusion.

"When a defendant completes a plea statement and admits to reading, understanding, and signing it, this creates a strong presumption that the plea is voluntary." State v. Smith, 134 Wn.2d 849, 852, 953 P.2d 810 (1998). As part of his plea agreement, Baker "affirmatively acknowledge[d]" that his California burglary convictions were comparable to Washington burglaries and therefore would count in his offender score. He also agreed that "[a]ny challenge . . . to the criminal history or scoring will constitute a breach" of his plea agreement.

Baker contends that he was misinformed and given ineffective assistance of counsel because he was told that the California burglary convictions counted

in his offender score.  However, he makes no citation to the record that indicates he was misinformed.  To the contrary, the record indicates that he agreed to their inclusion as part of a deal that involved the State's agreement to forego charging Baker with a firearm enhancement as well as five separate additional crimes. The court then properly sentenced Baker to the standard range based on Baker's stipulation that his offenses were comparable.  State v. Foster, 140 Wn. App. 266, 276, 166 P.3d 726 (2007) (defendant's stipulation that out-of-state conviction was comparable relieved the State of its burden to prove comparability).  Without any evidence that Baker was misinformed about the nature of the deal he was accepting, we cannot conclude that his plea was invalid.  Similarly, he cannot overcome the "strong presumption that counsel was effective" in stipulating to the comparability of these convictions when this decision was part of an agreement that brought significant benefit to Baker. Foster, 140 Wn. App. at 273.

We conclude that none of Baker's asserted errors render his plea invalid.

### Community Custody Term

Baker challenges the length of his community custody term.  As discussed above, Baker is constitutionally entitled to be sentenced under the 24 to 48 month community custody range in effect at the time of his crime.  The State concedes, and we agree, that on remand the court must resentence Baker in accordance with the law in effect at the time of the crime.  In re Pers. Restraint of

<u>Alston</u>, 7 Wn. App. 2d 462, 472, 434 P.3d 1066 (2019).[1]

Community Custody Conditions

Baker next challenges several of the conditions of his community custody. We address these in turn.

1. <u>Alcoholics Anonymous/Narcotics Anonymous Requirement</u>

The court ordered Baker to attend Alcoholics Anonymous or Narcotics Anonymous meetings as part of his community custody. Baker contends that this order violates the establishment clause of the First Amendment to the United States Constitution because these programs are religious. While we have held that mandating attendance at such a program would violate the establishment clause, we did so when presented with evidence that these programs were religious. <u>In re Pers. Restraint of Garcia</u>, 106 Wn. App. 625, 630, 24 P.3d 1091, 33 P.3d 750 (2001). Here, there is no information about these programs in the record, and we are not equipped to take judicial notice that these programs are universally religious today. <u>See</u> ER 201 (explaining when a court may take judicial notice). Accordingly, we do not strike this requirement.

2. <u>Drug Areas</u>

The court's community custody order directed Baker to "[s]tay out of drug areas as defined by the supervising Community Corrections Officer." The State

---

[1] Baker contends in passing that he must be sentenced to 36 months or fewer on remand but does not cite to any case supporting this. "We will not consider an inadequately briefed argument." <u>Norcon Builders, LLC v. GMP Homes VG, LLC</u>, 161 Wn. App. 474, 486, 254 P.3d 835 (2011). However, we note that after a remand, "a more severe sentence establishes a rebuttable presumption of vindictiveness," violating the defendant's due process. <u>State v. Franklin</u>, 56 Wn. App. 915, 920, 786 P.2d 795 (1989).

concedes, and we agree, that this is unconstitutionally vague. On remand, the condition must either be stricken or clarified. See State v. Irwin, 191 Wn. App. 644, 652, 655, 364 P.3d 830 (2015) (striking condition barring defendant from "'frequent[ing] areas where minor children are known to congregate, as defined by the'" supervising corrections officer, because without clarifying language or an illustrative list, condition was unconstitutionally vague).

### 3. Possession and Consumption of Alcohol

Baker next challenges the community custody provision directing him not to "purchase, possess[,] or consume alcohol" and not to "frequent establishments where alcohol is the chief commodity for sale." The statute in effect at the time permitted the court to prohibit the consumption of alcohol as a condition of community custody, but the State concedes that the additional requirements related to alcohol needed to be crime related.[2] Former RCW 9.94A.505(8) (2006) (permitting crime-related prohibitions and affirmative conditions); former RCW 9.94A.700(5)(d) (2003) (permitting prohibition on alcohol consumption). Because the court entered no findings that the crime was alcohol-related, the conditions other than alcohol consumption must be stricken.

---

[2] The State contends we should not address Baker's contentions that certain community custody provisions are not crime-related because he did not object to these provisions at sentencing. While we have declined to consider arguments that conditions are not crime-related where the defendant agreed to the conditions, State v. Casimiro, 8 Wn. App. 2d 245, 249, 438 P.3d 137, review denied, 193 Wn.2d 1029 (2019), generally, erroneous sentences may be challenged for the first time on appeal. State v. Bahl, 164 Wn.2d 739, 744, 193 P.3d 678 (2008). Here, Baker did not agree to the State's sentencing recommendation as part of his plea agreement, and we consider all of his challenges to community custody conditions.

### 4. Substance Abuse Treatment

The court ordered Baker to participate in substance abuse treatment as directed by the corrections officer. This provision was authorized under former RCW 9.94A.700(5)(e) (2003) as a crime-related provision. However, the court left blank a box indicating that a chemical dependency contributed to Baker's crime. On remand, the court should enter this finding or strike the condition.

### 5. Mental Health Treatment

The court also ordered Baker to participate in mental health treatment. Under former RCW 9.94A.505(9) (2006), "[t]he court may order an offender . . . to undergo a mental status evaluation and to participate in available outpatient mental health treatment, if the court finds that reasonable grounds exist to believe that the offender is a mentally ill person . . . and that this condition is likely to have influenced the offense." The court did not enter findings to this effect. On remand, the court should do so or strike the condition.

### 6. Drug Paraphernalia

Finally, the court prohibited Baker from "possess[ing] drug paraphernalia." In State v. Sanchez Valencia, 169 Wn.2d 782, 794-95, 239 P.3d 1059 (2010), the Washington Supreme Court held that a provision barring the possession of "'any paraphernalia'" was void for vagueness and noted that "'an inventive probation officer could envision any common place item as possible for use as drug paraphernalia.'" Similarly, we hold that this condition is void for vagueness and direct the trial court to strike or clarify the condition on remand.

11

## Legal Financial Obligations

Finally, Baker contends that the court erred by imposing crime lab fees, interest on nonrestitution legal financial obligations, and community custody supervision fees. Baker is indigent. At sentencing, the trial court indicated that it did not wish to impose any additional financial obligations beyond the victim penalty assessment, restitution, DNA (deoxyribonucleic acid) fee, and crime lab fee. Crime lab fees and nonrestitution interest may no longer be imposed on an indigent defendant. RCW 10.01.160(3); RCW 43.43.690; RCW 3.50.100(4)(b). Community custody supervision fees are discretionary legal financial obligations. RCW 9.94A.703(2). Accordingly, the court should strike these costs on remand. State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199, review denied, 195 Wn.2d 1022 (2020).

We affirm but remand for resentencing.

WE CONCUR: