GAYLE WILSON *v.* STATE OF INDIANA.

[No. 572A235. Filed January 23, 1973. Rehearing denied March 5, 1973.]

*Mrs. Harriette Bailey Conn,* Public Defender of Indiana, *John I. Morris,* Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General, *Stephen J. Cuthbert,* Deputy Attorney General, for appellee.

ROBERTSON, P.J.—The defendant-appellant (Wilson) is appealing an adverse decision to his petition for post-conviction relief. Wilson and his son were originally charged with First Degree Burglary but subsequently Wilson plead guilty to House Breaking in the Daytime to Commit a Felony. His son plead guilty to Third Degree Burglary. They were sentenced accordingly with the First Degree Burglary charge being dismissed.

Wilson's Motion to Correct Errors raises five issues for consideration, which are: (1) whether he was deprived of effective representation because his court-appointed attorney rep-

resented a co-defendant (Wilson's nineteen year old son) with conflicting interests in the same proceeding; (2) Wilson could not enter an intelligent plea without the benefit of skilled representation of counsel; (3) Wilson's plea of guilty was not voluntarily given; (4) there was no pre-sentence investigation prior to sentencing and commitment; and (5) the sentence of one to fourteen years for the offense of House Breaking in the Daytime to Steal is unconstitutional.

The in findings of fact and conclusions of law, as required by PCR1 § 6, are as follows:

"The Court finds the facts to be:

1. That on the 13th day of August, 1969, the defendant entered his plea of guilty in Greene Circuit Court Cause No. 1347 to House Breaking in the Daytime to Commit a Felony. Cause #1343, First Degree Burglary was thereafter dismissed by the State.

2. That Defendant was represented at all stages by his attorney, Karl Parker Vosloh.

3. That Defendant waived his right to a presentence investigation and requested the Court to pass immediate sentence herein.

4. The Court ordered the defendant imprisoned in the Indiana State Prison for an indeterminate sentence of not less than one (1) year or more than fourteen (14) years.

5. That thereafter, on September 24, 1971, petitioner filed his Post Conviction Relief Petition herein.

6. At the hearing upon Defendant's petition for Post Conviction Relief held on December 1, 1971, in this Court, the Defendant failed to present any evidence whatsoever as to Specifications 8(a), 8(b), and 8(d), set out in Defendant's petition for Post Conviction Relief although the Defendant was present at said time and gave evidence and that the defendant therefore failed to discharge his burden of proof as to said specifications. The Court specifically finds that:

(a) Defendant's conviction and sentence were not in violation of the United States Constitution Amendments IV, V, VI, XIV;

(b) The conviction and sentence of the Defendant herein was not in violation of the Indiana laws and Constitution and Burns Statutes 9-2252; and

(d) No evidence exists requiring vacation of the conviction and sentence of the Defendant.

7. Defendant was given his choice of any Attorney to represent him from a list of all Attorneys in Greene County, Indiana, and the Defendant chose Karl Parker Vosloh and requested the Court to appoint Karl Parker Vosloh as his Attorney and pursuant to the request of the Defendant, Karl Parker Vosloh was appointed by the Court to represent Defendant.

Karl Parker Vosloh was a former Judge of this Court having so served for more than six (6) years and was a competent Attorney of wide experience and had practiced law in this County and Court for more than thirty-five (35) years and had much experience in the trials of criminal cases as well as all other types of cases. Karl Parker Vosloh as Defense Counsel in this cause was competent and adequate and represented Defendant capably in this cause.

That under oath on the witness stand, Karl Parker Vosloh, Attorney for Defendant, stated that he was a graduate of Wabash College and Indiana University Law School, duly admitted to practice and had practiced since 1937 in Greene County and had participated as a defense Attorney in 150 criminal trials or more. Also that he had served as trial Judge of the Greene Circuit Court for a period of six (6) years. That in this case he had consulted with defendant on several occasions, that the defendant wanted to plead guilty and that he advised him of the statute and penalty thereunder; further that he was in the Court Room with defendant at all stages of the proceedings in both cases, and that he was able to get the State to agree to a charge carrying a lesser penalty than the original charge of First Degree Burglary and the Defendant had that benefit which Defendant took.

8. Defendant entered his plea of guilty voluntarily, knowingly, accurately and freely and testified under oath in this hearing that he knew the Statute under which he was to be sentenced and what the penalty would be. Defendant knew his sentence prior to entering his plea of guilty and such sentence was confirmed by his Attorney and he received the sentence from the Court he believed and said under oath in this hearing that he was to receive.

That defendant, on the witness stand, stated under oath that neither the Court, the Prosecutor, nor any law enforcement officer had promised or threatened him or done anything else to induce him to plead guilty and that he was well

treated and fed well while an inmate at the Greene County Jail for some eight (8) days.

That the defendant, on the witness stand, stated under oath that his Attorney had talked to him about the case and his plea and advised him of the penalty and was with him in the Court at all stages of the Court proceedings in both Greene Circuit Court Nos. 1343 and 1347.

9.  Defendant bargained for a plea to a lesser sentence and received exactly the sentence for which he bargained.

Defendant's Son was not sentenced to a term of 10 to 20 years but in fact received a sentence of one (1) year on the Indiana State Farm which was the sentence the defendant contended for.

The Court now states its conclusions of law as follows: to-wit:

1.  The law is with the State of Indiana and against the defendant petitioner, Gayle Wilson.

2.  That all matters contained in Defendant's petition for Post Conviction Relief should be and same are now overruled.

3.  *The* the petitioner defendant, Gayle Wilson, should and he is now ordered to complete his sentence at the Indiana State Prison as adjudicated.

4.  Defendant's petition for Post Conviction Relief is now overruled."

Before delving into the specific issues raised by Wilson's Motion to Correct Errors, we must take heed that:

". . . the petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence."
                                                     PCR1 §5.

Additionally:

". . . If every mistake or oversight made in the preparation of a case or at a trial, perceived in the leisure of retrospection, should be considered probatory of legal incompetency, then the majority of all criminal defendants might validly assert such a claim. However, hindsight is not the test, as this Court so recognized in Thomas v. State (1969), 251 Ind. 546, 242 N.E.2d 919. There is a presumption that counsel appointed or accepted by the court to represent the defendant is competent (citing authorities). This presumption can be overcome only if it can be shown that what the attorney did, or did not do, made the proceedings a mockery

and shocking to the conscience of the court. (Citing authorities)." *Robbins* v. *State* (1971), 257 Ind. 273, 274 N.E.2d 255, at 258.

A portion of Wilson's basic premise underlying the first allegation of error regards the sacrificial nature of his plea of guilty and subsequent sentence of from one to fourteen years to insure his son only getting a one year farm sentence for Third Degree Burglary. It is therefore alleged that Wilson's attorney had conflicting interests by also representing a co-defendant which, in turn, denied Wilson of effective representation.

Wilson cites us to the case of *Glasser* v. *U.S.* (1941), 315 U.S. 60, 62 S.Ct. 457, 86 L. Ed. 680, where, in discussing representation of co-defendants by one attorney, it was said:

"* * * so are we clear that the 'assistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. If the right to the assistance of counsel means less than this, a valued constitutional safeguard is substantially impaired." 315 US at 70, 62 S. Ct. at 465, 86 L. Ed. at 699.

\* \* \*

"Irrespective of any conflict of interest the additional burden of representing another party may conceivably impair counsel's effectiveness."

315 US at 75, 62 S. Ct. at 467, 86 L. Ed. at 702.

Wilson has not presented us with authority, nor have we been able to discover authority, for the proposition that representation of co-defendants for the purpose of negotiating a plea, per se, is a conflict of interest. Wilson's attorney had instructions to obtain for each defendant sentences of the least possible amount of time. This he successfully accomplished. We cannot, therefore, say that there was demonstrable conflicting interests. Such being the situation, we cannot further say that the *Glasser* case, *supra,* requires a reversal under the instant facts.

It has been held that when a conflict of interest may be present an evidentiary hearing would be a suitable method of aiding the court in determining if the defendant is entitled to relief. See *Zurita* v. *U.S.*, 7 Cir. (1969), 410 F.2d 477. That procedure was followed in the instant case with a negative finding for Wilson.

The transcript of the proceedings has conflicting evidence as to whether Wilson and his son's pleas of guilty were a package deal. Wilson and his son testified that they thought if the father did not plead guilty for the one to fourteen years the son would get ten to twenty years on the First Degree Burglary. Wilson's attorney, Vosloh, and the Prosecuting Attorney testified directly to the contrary. Therefore, from a technical standpoint, the trial judge could have properly found that Wilson failed to carry his burden of proving his allegation of conflicting interests by a preponderance of the evidence. The testimony of competent witnesses is to be weighed by the trier of fact. *Asher* v. *State* (1969), 253 Ind. 25, 244 N.E.2d 89.

A portion of the argument also directed to the first assignment of errors is that Wilson did not have sufficient knowledge of the alternatives to allow an intelligent choice in the selection of his attorney.

The trial judge read a list of Greene County attorneys. Wilson and his son indicated that any would be alright. The judge suggested Vosloh, the first name on the list, to which Wilson and his son assented.

> "The choice of an attorney to represent a pauper defendant is wholly within the sound discretion of the trial court and can only be reviewed for abuse. *State ex rel. Brown* v. *Thompson* (1948), 226 Ind. 392, 81 N.E.2d 533; *Schuble* v. *Youngblood* (1947), 225 Ind. 169, 73 N.E.2d 478." *State* v. *Irvin* (1973), 259 Ind. 596, 290 N.E.2d 441.

We find no abuse of discretion in this case as to the appointment of pauper counsel.

Additionally, it has been held that a sacrificial plea of the sort that Wilson contends to be existent in the instant case is not coercion requiring a reversal of the proceedings.

". . . We are not prepared to say that it can be coercion to inform a defendant that someone close to him who is guilty of a crime will be brought to book if he does not plead. If a defendant elects to sacrifice himself for such motives, that is his choice, and he cannot reverse it after he is dissatisfied with his sentence, or with other subsequent developments. (citing authorities)." *Kent* v. *U.S.*, 1 Cir. (1959), 272 F.2d 795, 798.

(We are also of the opinion that the *Kent* case, *supra*, is controlling of Wilson's third assignment of error, namely, that his plea of guilty was not voluntarily given.)

Wilson's second allegation of error, that of not entering an intelligent plea of guilty without the benefit of skilled representation of counsel, is predicated upon the fact that the attorney did not make an investigation of the facts surrounding the case, or interview witnesses, etc. Wilson directs us to authorities which, in substance, hold that a criminal defendant is entitled to effective counsel. With this we have no quarrel, however, we have not had incompetency demonstrated in the instant case.

". . . An accused has the right to elect as to whether he will stand trial or plead guilty." *Abraham* v. *State* (1949), 228 Ind. 179, at 185, 91 N.E.2d 358 at 360.

With the Prosecuting Attorney questioning and defense attorney Vosloh answering, the following was testified to:

"Q. Now in the course of preparing the defense of these two defendants, did you talk to the victims of the offense?

A. I wasn't asked to prepare a defense in this case, I was asked to compromise it.

Q. And at whose request were you asked not to prepare a defense but to compromise?

A. Both of the defendants did.

Q. What was the substance of that request?

A. Yes. I remember very distinctly. I asked them if they wanted to try this case or whether they wanted to compromise it. Mr. Wilson said, 'I want to get off with the least amount I could.' That is when I came to see the Pros. Attorney.

Q. So from the point to which Mr. Wilson told you he wanted to get off with the least amount he could—all of your efforts were directed in getting him to plead and not in talking to—

A. No. We went over Mr. Wilson's background. His criminal record—his social record and his family and I went over the same thing with the boy. His background etc. that would effect a compromise in this case.

Q. That investigation was aimed at your negotiation precess?

A. Yes it was.

Q. So whether Gayle Wilson said he wanted to compromise and you arranged a compromise—you negotiated that compromise?

A. Yes. I negotiated that.

Q. You testified on direct examination that you consulted with the two defendants on several occasions. Do you remember or have any idea of how many times you talked to them? How much time did you spend with the defendants?

A. Oh, I think I had two consultations with them at the jail, possibly a quarter of an hour on each and then I saw them in court. I would say I conferred with them for—oh about an hour in the morning. I would say I conferred with them on these matters relative to the sentences and matters relating thereto possibly one and one-half hours."

Wilson testified in response to questions by his attorney:

"Q. Now you were asked were you not at the time of your guilty plea if you were satisfied with the services of your attorney?

A. Yes.

Q. And you said?

A. Yes sir.

Q. Are you now satisfied with the services of your attorney?

A. You mean—

Q. Mr. Vosloh.

A. No, absolutely not.

Q. Why are you dissatisfied now?

A. After I got to thinking about it, he didn't do anything at all. Nothing to prepare a case or try to defend me in any way."

A review of the transcript reveals no testimony to show that Attorney Vosloh failed to represent his client as he was directed, excepting Wilson's above quoted answer.

Having determined that no reversible error has existed thus far, we turn to Wilson's fourth assignment of error which states that there was no pre-sentence investigation made prior to sentencing and commitment. The applicable statute reads:

"No defendant convicted of a felony shall be committed by any criminal court of record before a written precommitment investigation report, prepared by a probation officer, is presented to and considered by the sentencing court * * *" IC 35-8-1-2, Ind. Ann. Stat. § 9-2252 (Burns 1972).

The Indiana Supreme Court, speaking through Justice Hunter, has said:

"The precommitment investigation is not a meaningless ritual as contended by appellants. *Invaluable information may be gathered which will aid* the judge and *prison officials in properly committing the convicted felon and in future actions on work assignments and parole applications.* Nor will our holding impair the usefulness of the report required by the statute. It may be that the trial judge will require the report prior to sentencing in order that various facts be before him. However, the statutory requirement is fulfilled if the report is filed prior to the order of commitment." (our emphasis) *Robb* v. *State* (1970), 253 Ind. 448, 255 N.E. 2d 96, 99. See also: *Ware* v. *State* (1962), 243 Ind. 639, 189 N.E.2d 704.

The State has replied to Wilson's argument that if a defendant can validly waive such constitutional guarantees as a trial

by jury, then a defendant could surely waive statutory rights. We are of the opinion, based upon the state and subsequent case-law, that the defendant does not have standing to waive the report. The statute is mandatory in tenor, and as indicated in the *Robb* case, *supra*, the report is for the benefit of the court and prison officials.

Wilson's argument on the unconstitutionality of the sentence is predicated, in part, upon the holding in *Dembowski* v. *State* (1968), 251 Ind. 250, 240 N.E.2d 815, which said that a punishment for a lesser included offense cannot be more than in the greater offense. Such is not the instant case where one to fourteen years (Housebreaking in the Daytime) is less than ten to twenty years (First Degree Burglary). Wilson's argument concerning Second Degree Burglary is not applicable under the facts of this case.

The other portion of Wilson's argument concerning unconstitutionality of the sentence is that larceny is no longer a crime, therefore, charging one with House Breaking in the Daytime to Commit a Felony, to-wit, Larceny, is unconstitutional. This contention is rebutted by the following statute:

"The general purpose of this act . . . is to unify several traditionally distinct offenses against person and property in order to eliminate pointless procedural obstacles to the conviction of thieves and swindlers.

Specifically, it is the purpose of this act to consolidate all of the theft group of crimes except robbery, and traditional terminology has been abandoned in order that that purpose may be achieved. Consequently, whenever the terms 'larceny,' . . . are used in any existing procedural or substantive statute or rule, they shall be construed to mean theft as described herein." IC 35-17-5-2 Ind. Ann. Stat. § 10-3029 (Burns 1972). See also: *Presley* v. *State* (1972), 152 Ind. App. 637, 284 N.E.2d 526.

The judgment of the trial court is affirmed in part and reversed in part, with the commitment order of the defendant being ordered amended to include a precommitment investigation and any other necessary proceedings not inconsistent herewith.

Lowdermilk and Lybrook, JJ., concur.