[No. 9884–5–I.   Division One.   July 26, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. DANIEL W. FREDERICK, *Appellant.*

*Greg Boos,* for appellant (appointed counsel for appeal).

*David S. McEachran, Prosecuting Attorney,* and *Martha Gross, Deputy,* for respondent.

JAMES, J.—Daniel Frederick appeals his conviction following jury trial for first degree robbery[1] while armed with a deadly weapon.[2] He also appeals his sentencing as a habitual criminal. We affirm.

During their deliberations on the special weapons verdict, jurors submitted the following question to the trial judge concerning the deadly weapon interrogatories: "Does the law preclude a knife of less than three inches of being a deadly weapon?" After consulting with both counsel in chambers, the trial judge refused defense counsel's request for an instruction to affirmatively explain the applicable law and answered in writing, "No." After further deliberations, the jury returned the verdicts from which Frederick

---

[1]RCW 9A.56.200 provides:

"(1) A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:

"(a) Is armed with a deadly weapon; . . ."

[2]The Board of Prison Terms and Paroles sets minimum terms for persons "armed with a deadly weapon at the time of the commission of his offense, . . ." RCW 9.95.040.

appeals.

Frederick contends that the trial judge's response to the jury's question improperly suggested that the particular knife offered in evidence was a deadly weapon and that the deadly weapon verdict must therefore be stricken. We do not agree.

Prohibitions against communication between a trial judge and a deliberating jury reach primarily those communications occurring without presence of or notice to counsel. Indeed, the trial judge may give additional written instruction to a deliberating jury on any point of law in the presence of or after notice to the parties or their counsel. CrR 6.15(f)(1).

Both counsel were present and apprised of the jury's question. The jury's question was unambiguous. By using the word "preclude," the jury plainly sought to determine only if a shorter blade *could be* a "deadly weapon." The trial judge's response to this question was legally correct, *State v. Thompson,* 88 Wn.2d 546, 564 P.2d 323 (1977), *State v. Sorenson,* 6 Wn. App. 269, 492 P.2d 233 (1972), and suggested no additional or improper meaning. *United States v. McDaniel,* 545 F.2d 642 (9th Cir. 1976), on which Frederick relies, involved an ambiguous question concerning which the trial judge's response was legally incorrect under one interpretation. The case is therefore distinguishable.

Before trial, defense counsel filed a discovery request which required the State to "[s]tate whether Defendant has any prior convictions and if so enumerate." The prosecutor advised defense counsel before trial that the State would file habitual criminal charges if Frederick was convicted of first degree robbery. At that point the prosecutor was personally aware of two 1976 convictions, of which he informed defense counsel, and was awaiting a report from state and federal authorities.[3] The prosecutor did not inform defense

---

[3]The Washington State Identification Section and the FBI National Crime Index computer provide reports which take 3 to 4 weeks to obtain and generally

counsel of a 1973 conviction until he received the report from state and federal authorities after the trial. After trial, the State filed a supplemental information charging Frederick as a habitual criminal, alleging prior felony convictions filed in Whatcom County for grand larceny (1973) following jury trial, and for first degree robbery and first degree kidnapping (October 13, 1976) based upon guilty pleas.

Frederick contends that the prosecutor's failure to provide defense counsel with a complete pretrial list of all of Frederick's prior convictions constituted governmental misconduct requiring dismissal of the habitual criminal proceedings under CrR 8.3. He argues that the prosecutor had constructive notice of convictions included within records of his own county's courthouse. We do not agree.

The determination of whether a prosecution should be dismissed pursuant to CrR 8.3(b) for governmental misconduct or arbitrary action is a matter within the sound discretion of the trial judge, *State v. Dailey,* 93 Wn.2d 454, 610 P.2d 357 (1980); *State v. Starrish,* 86 Wn.2d 200, 544 P.2d 1 (1975). Government mismanagement may constitute misconduct justifying a dismissal pursuant to CrR 8.3(b). *State v. Dailey, supra; State v. Wilke,* 28 Wn. App. 590, 624 P.2d 1176 (1981).

However, the record before us discloses no governmental misconduct. The prosecutor is not charged with "constructive notice" of all of his county's records. Rather, the prosecutor's duties, as set forth in CrR 4.7, require disclosure of "information within the knowledge, possession or control of members of his staff." CrR 4.7(a)(4). To require a prosecutor to search court files without some reason to believe that particular records will be found therein would impose an unreasonable burden upon the State. No contention is made that the prosecutor's reliance upon a search conducted by state and federal authorities was improper or that the search was unreasonably delayed.

are not available before trial. (Affidavit of David S. McEachran, Prosecuting Attorney.)

We also discern no prejudice to Frederick. At the conclusion of his trial, he was in the same position he would have been if the State had presented the information before trial and he had been convicted after electing to go to trial. *State v. Kender,* 21 Wn. App. 622, 587 P.2d 551 (1978). The trial judge did not abuse his discretion by failing to dismiss the habitual criminal information.

Frederick next contends that the habitual criminal statute, RCW 9.92.090,[4] if read to permit consideration of his 1973 grand larceny conviction for an offense since reclassified as a misdemeanor, is impermissibly vague. We do not agree.

■ The statute is not ambiguous. The classification of the previous offense at the time of conviction determines whether it constitutes a felony for purposes of RCW 9.92-.090, and for such purposes its reclassification as a misdemeanor is irrelevant. *State v. Castillo,* 23 Wn. App. 519, 596 P.2d 312, *review denied,* 92 Wn.2d 1023 (1979); *State v. Ross,* 30 Wn. App. 324, 634 P.2d 887 (1981), *review denied,* 96 Wn.2d 1027 (1982). The trial judge did not err in treating Frederick's 1973 grand larceny conviction as a prior felony under RCW 9.92.090.

In 1978, Frederick brought a personal restraint petition, alleging that his 1976 guilty pleas were the result of threats by his codefendant and jail cellmate, one Gary Griffin, to kill him if he did not plead guilty and were therefore involuntary. The petition was denied by the Court of Appeals (cause 6333–I). The Supreme Court denied review of Frederick's personal restraint petition because his claims were "not reasonably supported by the record which con-

---

[4]RCW 9.92.090 provides, in pertinent part:

"Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state penitentiary for life."

sists of the verbatim transcript of the hearing on plea of guilty." Frederick renewed this contention in connection with the habitual criminal proceedings here, and brought to the habitual criminal proceedings additional extrinsic evidence which apparently was not included in his 1978 personal restraint petition.

The trial judge considered Frederick's offer of proof and the files concerning his personal restraint petition, but denied the motion because he concluded that, even if the allegations were true, such nongovernmental coercion or threats did not render the plea involuntary.

Frederick now contends that the trial judge erred by treating his 1976 guilty pleas as constitutionally valid for purposes of the habitual criminal proceedings because of alleged threats against his life by his codefendant and cellmate. Frederick concedes, however, that the record at his plea–taking hearing would indicate a constitutionally valid plea was entered.[5]

Frederick did present additional extrinsic evidence in support of his contention. But extrinsic evidence is inadmissible to determine the constitutional validity of pleas entered subsequent to our Supreme Court's decision in *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976). *State v. Holsworth,* 93 Wn.2d 148, 160, 607 P.2d 845 (1980). If a defendant can present extrinsic evidence to impeach a conviction where the record on its face shows a constitutionally valid plea, a trial judge has no effective means to assure that pleas are valid and there can be no finality to litigation of these issues. If the record, without extrinsic evidence, shows the plea to have been constitutionally valid when made, use of the resultant conviction in a habitual criminal

---

[5]"Only because Garry [*sic*] Griffin's threats and . . . ineffective assistance of counsel forced FREDERICK to present an illusion of a voluntary entry of a plea of guilty to avoid death, the Judge's inquiry was sufficient on the record as it was met by self preserving statements of voluntariness and that threats of coercion were not involved in causing the plea to be made." Brief of Appellant, at 44–45.

proceeding is proper.[6] We conclude the trial judge properly considered Frederick's 1976 convictions as a prior felony.

We have also considered the issues raised by Frederick's pro se brief, which relate to the credibility of an investigating officer, to the reliability of the victim's identification of Frederick as the robber, and to the sufficiency of the evidence that a first degree robbery occurred. We find Frederick's contentions with respect to these issues to be without merit.

The judgment and sentence are affirmed.

RINGOLD and CORBETT, JJ., concur.

Reconsideration denied September 27, 1982.

Review granted by Supreme Court January 21, 1983.

---

[6]Accordingly, we need not decide the issue of whether alleged nongovernmental "coercion" renders a plea constitutionally invalid. There is, however, considerable case law to the effect that analogous pressures felt by a defendant with respect to protecting third parties from prosecution, *e.g., State v. Cameron,* 30 Wn. App. 229, 633 P.2d 901 (1981), *Wilson v. State,* 155 Ind. App. 100, 291 N.E.2d 570 (1973), or fear of a particular sentence, *Brady v. United States,* 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970) (death penalty), or a particular place of servitude, *United States v. Webb,* 433 F.2d 400 (1st Cir. 1970), do not render a plea involuntary. Frederick has cited us no authority to the contrary.