[Nos. 11823–4–I; 11824–2–I. Division One. September 12, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. FRED DALE LEFEVER II, *Appellant.*

730

*Richard Hansen* and *Allen & Hansen,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Deborah Phillips, Deputy,* for respondent.

DURHAM, A.C.J.—Fred LeFever appeals his conviction of two counts of robbery in the second degree and one count of robbery in the first degree. He also appeals the trial court's finding that he is a habitual criminal.

The charges against LeFever were filed as a result of three robberies at two Safeway stores in Seattle which occurred between September 5 and October 17, 1981. The details of the robberies are irrelevant to the issues on appeal. At trial, the court allowed testimony that, when LeFever was arrested, he had a $125 per day heroin habit, and, thus, a motive to commit the robberies. The court also ruled that LeFever's 1974 conviction for robbery would be admissible if he chose to testify, and excluded testimony of a public defender concerning observations made during a police lineup.

After the jury returned a verdict of guilty on all three counts of robbery, the State filed a supplemental information charging LeFever with being a habitual criminal. The trial court so held, and revoked probation given in a 1980 sentencing. LeFever appeals his robbery convictions, the habitual criminal finding, and the revocation of his probation.

## ADMISSIBILITY OF HEROIN ADDICTION

At trial, LeFever's parole officer testified that when LeFever was arrested, he confessed to a $125 a day, or $3,750 per month, heroin habit. At that time, LeFever was earning $1,400 per month. The trial court found this testimony highly relevant to the crime charged, explaining:

> The fact that the person has a habit that requires $125 a day certainly supplies the substantial motivation for the commission of the offense that is charged here if the jury believes that he did in fact commit the offense. It is

a jury question obviously.

LeFever assigns error to the admission of testimony related to his heroin habit. He claims that its prejudicial effect far outweighed its probative value, particularly because the evidence of his guilt was otherwise unconvincing. The State responds that this evidence was admissible to demonstrate LeFever's motive to commit the robberies.

■ ER 404(b) generally requires the exclusion of evidence of other crimes, wrongs or acts for the purpose of undermining a defendant's character, unless such evidence is offered to prove, *inter alia,* a defendant's motive.[1] The trial court must determine if the probative value of the evidence is outweighed by its prejudicial effect. ER 403. *See State v. Robtoy,* 98 Wn.2d 30, 42, 653 P.2d 284 (1982); *State v. Saltarelli,* 98 Wn.2d 358, 361, 655 P.2d 697 (1982). The balancing of these factors is a matter within the sound discretion of the trial court, and will be disturbed only if the court abused its discretion. *State v. Robtoy, supra.*

The trial court's determination that LeFever's addiction was highly probative of his motive to commit robbery is supported by the record. First, there was conclusive evidence that LeFever had a costly heroin habit. He admitted his addiction to his wife and his parole officer, both of whom so testified.[2] Second, as previously explained, LeFever did not have sufficient legitimate income to finance his addiction. Thus, he was faced with the continual need for additional and ready cash resources. Moreover, we recognize that the need for money to support a heroin habit is

---

[1]ER 404(b) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[2]This case is distinguishable from those in jurisdictions outside of Washington, cited by LeFever, in which a drug addiction was inferred by the police. *See Powell v. State,* 478 S.W.2d 95 (Tex. Crim. App. 1972) (addiction inferred from needle marks); *State v. Sutfield,* 354 So. 2d 1334 (La. 1978) (addiction inferred from needle marks).

categorically different than the need any of us might encounter when faced with an unexpected financial burden. Absent assistance from friends or family, the legitimate avenues of financial aid open to an addict are few, if any.[3] The physical and mental suffering associated with heroin addiction provides a compelling impetus to resort·to illegal means. Indeed, recent empirical data reflect the dramatically increased likelihood that a person with a heroin addiction will commit a robbery.[4]

We next consider the prejudicial effect of LeFever's heroin addiction. LeFever points to cases in other jurisdictions which held that it was reversible error to introduce evidence of a drug habit to prove motive for theft or robbery. *See Gould v. State,* 579 P.2d 535, 2 A.L.R.4th 1288 (Alaska 1978); *People v. Bartlett,* 256 Cal. App. 2d 787, 64 Cal. Rptr. 503 (1967). *See also People v. Cardenas,* 31 Cal. 3d 897, 647 P.2d 569, 184 Cal. Rptr. 165 (1982); *State v. Knutson,* 45 Or. App. 1051, 609 P.2d 922 (1980). Central to these decisions, however, is the assumption stated by the California court in *People v. Cardenas* at page 907 that:

> The impact of narcotics addiction evidence "upon a jury of laymen [is] catastrophic. . . . It cannot be doubted that the public generally is influenced with the seriousness of the narcotics problem . . . and has been taught to loathe those who have anything to do with illegal narcotics in any form or to any extent." (*People v. Davis, supra,* 233 Cal.App.2d at p. 161 [(1965)].)

While we acknowledge the growing concern about drug

---

[3]LeFever had finally turned to a drug rehabilitation program for help. Ironically, he already was scheduled to begin treatment shortly after his arrest. There was no evidence, however, that he had obtained assistance of this type during the period the robberies were committed.

[4]In a 1982 study of California inmates, for instance, prisoners who had a heroin addiction of at least $50 a day prior to incarceration reported committing over 15 times as many robberies, 20 times as many burglaries, and 10 times as many thefts as inmates who did not use drugs. J. & M. Chaiken, *Varieties of Criminal Behavior* 160–61 (1982).

abuse in our society,[5] we cannot agree that the introduction of probative drug–related evidence is necessarily "catastrophic." As the Ninth Circuit Court of Appeals stated in *United States v. Parker,* 549 F.2d 1217, 1222 (9th Cir.), *cert. denied,* 430 U.S. 971 (1977):

> Under appropriate circumstances, evidence of narcotics dealings is admissible to show a defendant's motive to commit a robbery. *United States v. Lee,* 166 U.S. App.D.C. 67, 509 F.2d 400 (1974). While such evidence may present a danger of unfair prejudice to the defendant, that danger must substantially outweigh the probative value of the evidence before a court may properly exclude it. Federal Rules of Evidence 403. As this court stated in *United States v. Mahler,* 452 F.2d 547 (9th Cir. 1971), *cert. denied,* 405 U.S. 1069, 92 S.Ct. 1517, 31 L.Ed.2d 801 (1972), evidence relevant to a defendant's motive "is not rendered inadmissible because it is of a highly prejudicial nature. . . . The best evidence often is." *Id.* at 548.

Similarly, in *United States v. Saniti,* 604 F.2d 603 (9th Cir.), *cert. denied,* 444 U.S. 969 (1979), the Ninth Circuit Court of Appeals considered it acceptable that evidence of a defendant's $250 a day heroin and morphine habit was admitted to show his motive for robbing a bank. *See also United States v. Lee,* 509 F.2d 400, 406 (D.C. Cir. 1974), *cert. denied,* 420 U.S. 1006 (1975). The Georgia Court of Appeals also allowed the admission of a defendant's out–of–court statement of financial need to purchase drugs, where it tended to establish his motive for a theft. *Archie v. State,* 137 Ga. App. 386, 224 S.E.2d 64 (1976).

 In short, we conclude that, even though evidence of drug use may have some prejudicial effect, *see State v. Renneberg,* 83 Wn.2d 735, 737, 522 P.2d 835 (1974), it still

---

[5]We note, for example, that current data from emergency rooms, the Drug Enforcement Administration, police reports, and drug treatment centers indicate a recent increase in the abuse of heroin and opiates in King County. This follows a period of several years in which the use of such drugs declined. A. Wrede, *Recent Trends in the Use of Opiates and Cocaine in King County, Washington 1983* (June 1983) (Planning and Evaluation Section, King County Division of Alcoholism and Substance Abuse Services).

may be appropriate to introduce it when it is highly probative of motive. This is especially fitting where the trial court has carefully handled the introduction of potentially prejudicial evidence. Here, the court was extremely cautious in its treatment of LeFever's drug addiction. It admonished LeFever's parole officer to identify himself only as a counselor for the defendant. Furthermore, the court gave the jury the following instruction, which restricted the use of drug–related testimony:

> Evidence has been introduced in this case that the defendant was spending money to purchase drugs. You may consider this evidence only insofar as it may be relevant to his financial situation as bearing on the issue of motive or intent, but you may not consider this as evidence of defendant's character or for any other purpose.[6]

Instruction 5. We must presume that the jury heeded the court's cautionary instruction. *State v. Wixon,* 30 Wn. App. 63, 75, 631 P.2d 1033 (1981).

In view of the highly probative nature of LeFever's heroin addiction and the trial court's cautious treatment of its prejudicial aspects, we hold that the court did not abuse its discretion in admitting evidence of the drug habit.

### EVIDENTIARY RULINGS

LeFever next assigns error to the trial court's exclusion of testimony by Robert Boruchowitz, a public defender. Boruchowitz observed a lineup which was used for identification purposes, and made notations about the impressions of some of the witnesses present. The court disallowed his testimony because the basis of Boruchowitz' information was unclear.

It is a matter of trial court discretion whether an

---

[6]In giving this instruction, the trial court acted in conformity with ER 105, which states:

"When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

out–of–court statement is sufficiently trustworthy to be admitted. *State v. Whyde,* 30 Wn. App. 162, 167, 632 P.2d 913 (1981). A reading of the record reveals that Boruchowitz never provided an adequate basis for his notes. When asked by LeFever's counsel for the source of his information that a witness' identification of LeFever was "tentative", for example, Boruchowitz replied:

I don't recall exactly. My inference from these notes would be that I saw the form in her hand more as she passed it to the detective and asked her to talk about it or possibly I was in the back of the room and asked her but I'm pretty certain I either saw that on her thing or I heard her talk about it and I wanted to ask her about it.

The court also asked Boruchowitz if he could report a direct communication from a witness. To this inquiry Boruchowitz responded, "I wish I could, Your Honor . . ." Given these inadequacies in the foundation of Boruchowitz' statements, the trial court was justified in excluding his testimony.

LeFever next claims that the trial court erred by admitting evidence of his convictions for robbery in 1974 for purposes of impeachment. He asserts that prior convictions for the same offense charged in this case had great potential to be taken as evidence of guilt, and outweighed their use for the limited issue of credibility.

We need not reach the merits of this assertion, because LeFever failed to make a timely offer of proof. In *State v. Hebert,* 33 Wn. App. 512, 516, 656 P.2d 1106 (1982), we addressed the requirement of an offer of proof in order for an appellant to raise the issue of trial court error regarding the admissibility of prior convictions:

To establish that the trial court's ruling admitting evidence of prior convictions under ER 609 was prejudicial, a defendant who does not testify must first demonstrate on the record that he would have taken the stand but for the adverse ruling and that his testimony would have aided his defense. *United States v. Tercero,* 640 F.2d 190 (9th Cir. 1980); *United States v. Hendershot,* 614 F.2d 648 (9th Cir. 1980); *United States v. Cook,* 608 F.2d 1175

(9th Cir. 1979). *See State v. Ruzicka,* 89 Wn.2d 217, 570 P.2d 1208 (1977). A good faith offer of proof following the close of the State's case satisfies this requirement, *see State v. Hill,* 83 Wn.2d 558, 520 P.2d 618 (1974), and provides the appellate courts with an adequate basis for reviewing the trial court's ruling and its effect. *United States v. Halbert,* 668 F.2d 489, 494 (10th Cir.), *cert. denied,* 456 U.S. 934, 72 L. Ed. 2d 453, 102 S. Ct. 1989 (1982); *United States v. Hendershot, supra; see State v. Moore,* 33 Wn. App. 55, 651 P.2d 765 (1982); *State v. Anderson,* 31 Wn. App. 352, 641 P.2d 728, *review denied,* 97 Wn.2d 1020 (1982); ER 103.

*See also State v. Pam,* 98 Wn.2d 748, 763–64, 659 P.2d 454 (1983) (Utter, J., concurring); *State v. Austin,* 34 Wn. App. 625, 662 P.2d 872 (1983).

The record does not reflect an offer of proof by LeFever at the close of the State's case, nor does LeFever claim that he made one. Instead, LeFever points to an affidavit filed more than 1 week after the jury returned its verdict, in which he stated that he would have testified at trial if the court had excluded any references to his past convictions. This was insufficient. LeFever's offer of proof should have been made at the close of the State's case. *State v. Hebert, supra.*

In any event, the admission of prior convictions is a decision resting within the discretion of the trial court, to be reversed only upon a clear showing of abuse. The court must balance the importance of the jury hearing the defendant's account of events against the importance of the jury being aware of his prior convictions. *Pam,* at 758. LeFever does not claim that the trial court abused its discretion in this case, nor do we find any abuse. The court considered the arguments of both parties and determined that the probative value of the prior convictions outweighed any possible prejudicial effect. *See State v. Davenport,* 33 Wn. App. 704, 707, 657 P.2d 794 (1983).

## HABITUAL CRIMINAL PROCEEDING

LeFever next argues that the trial court erred by finding him to be a habitual criminal. He maintains that the court

improperly denied his motion to dismiss the proceedings because of prosecutorial delay. Additionally, LeFever contends that, in any event, there was an insufficient factual basis to support a guilty plea in each of the underlying felonies required for this conviction. We disagree with both assertions.

■ First, we hold that the trial court correctly refused to dismiss the habitual criminal proceedings under CrR 8.3(b).[7] As we explained in *State v. Frederick,* 32 Wn. App. 624, 627, 648 P.2d 925 (1982), *review granted,* 98 Wn.2d 1015 (1983):

> The determination of whether a prosecution should be dismissed pursuant to CrR 8.3(b) for governmental misconduct or arbitrary action is a matter within the sound discretion of the trial judge, *State v. Dailey,* 93 Wn.2d 454, 610 P.2d 357 (1980); *State v. Starrish,* 86 Wn.2d 200, 544 P.2d 1 (1975).

Here, LeFever was arraigned on habitual criminal charges on February 10, 1982, and a trial date of April 9, 1982 was set at that time. On April 16, 1982, the court granted the State a continuance in order to allow resolution of LeFever's appeal of the entry of a nunc pro tunc judgment and sentence. On May 14, 1982, the trial was set over until May 17, 1982, due to the illness of the deputy prosecuting attorney. The State sought a further deferral on May 17, to await the outcome of LeFever's appeal on one of the underlying felonies which was to be considered in the habitual criminal proceedings. This last request was denied and the case was reopened on May 20, 1982. LeFever repeatedly objected to these delays.

Although the State's delays had the cumulative effect of extending LeFever's trial date by about 6 weeks, and could possibly have been minimized further, the trial court did not abuse its discretion in granting the various continu-

---

[7]CrR 8.3(b) provides:

"The court on its own motion in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution and shall set forth its reasons in a written order."

ances. In each instance there was a legitimate reason for delay. This was not a case of blatant misconduct or mismanagement. *Cf. State v. Sulgrove,* 19 Wn. App. 860, 578 P.2d 74 (1978) (delay due to prosecuting attorney failing to charge alleged offense properly and failing to marshall admissible evidence in support of the proper charge in timely fashion).

Second, we do not find that any of the underlying felonies relied upon by the trial court were factually flawed. In addition to LeFever's conviction of three counts of robbery in this case, the State listed the following felony convictions as a basis for the habitual criminal charge in its ·supplemental information:

(1) A 1971 conviction of forgery in the first degree;
(2) a 1972 conviction of possession with intent to distribute heroin;
(3) a 1974 conviction of three counts of robbery; and
(4) a 1980 conviction of possessing stolen property in the second degree.

On May 17, 1982, the trial court dismissed the habitual criminal charges against LeFever after determining that his 1974 and 1980 convictions provided an insufficient basis for a further conviction. The court did not permit LeFever's 1971 and 1972 convictions, however, and the State moved for reconsideration. The case was reopened on May 20, 1982. At that time, the court considered LeFever's 1971 and 1972 convictions, along with his conviction in the instant case, and found LeFever to be a habitual criminal.

LeFever now challenges the factual sufficiency of his 1971, 1974, and 1980 convictions. His objection to the latter two convictions is misplaced. The trial court's findings of fact and conclusions of law clearly show that it relied on neither of these convictions in determining that LeFever was a habitual criminal. Since we have not found error in the court's ruling in the instant robbery case, a successful challenge to LeFever's habitual criminal conviction hinges solely on the invalidation of his 1971 conviction for forgery.

LeFever's objection to the 1971 forgery conviction is

quite limited:

> The evidence the State introduced in support of the 1971 forgery conviction . . . reveals that there was absolutely no factual basis to support the charge because the Statement of Defendant on Plea of Guilty contains no discussion whatever of the facts underlying the charge.

■ LeFever did not include a copy of the plea in his record on appeal. The State, however, supplied the following colloquy between LeFever and the court:

> THE COURT: Can you say in your own words what facts convince you that you're guilty of that crime?
>
> THE DEFENDANT: I did cash the check, Sir. This is the crime of forgery. I endorsed some checks and cashed them, and I did do it. So, there is no way of getting around it. So, I'm guilty.
>
> THE COURT: It's no crime to cash a check or to endorse a check. Do you mean that you endorsed someone's name that you had no authority to endorse?
>
> THE DEFENDANT: Yes, Sir.
>
> THE COURT: Did you know at the time you presented the check for payment that you had no right to receive funds?
>
> THE DEFENDANT: Yes, Sir.

We hold that this was a sufficient discussion of the factual basis of the forgery charge, *see State v. Holsworth,* 93 Wn.2d 148, 153 n.3, 607 P.2d 845 (1980), and approve the trial court's inclusion of the 1971 forgery conviction as an underlying felony in its habitual criminal judgment. Thus, the court did not err in finding LeFever to be a habitual criminal.

### PROBATION REVOCATION

Finally, LeFever assigns error to the revocation of probation for his 1980 conviction of possession of stolen property. Again, we find no error.

■ In *State v. Johnson,* 29 Wn. App. 638, 640, 630 P.2d 448 (1981), this court stated:

> An order to revoke probation should be affirmed if it is clear that the trial judge was reasonably satisfied that the terms of probation were violated. The evidence need not establish a violation beyond a reasonable doubt. *State v.*

*Myers,* 86 Wn.2d 419, 545 P.2d 538 (1976); *State v. Kuhn,* [81 Wn.2d 648, 503 P.2d 1061 (1972)]; *State v. Shannon,* 60 Wn.2d 883, 376 P.2d 646 (1962); *State v. Playter,* 12 Wn. App. 388, 531 P.2d 831 (1974).

A condition of LeFever's probation in 1980 was that he commit no violations of law. Because we hold that the robbery convictions in the present case are valid, LeFever thus violated the terms of his probation and it was properly revoked.

We affirm the judgment.

WILLIAMS and SCHOLFIELD, JJ., concur.

Review granted by Supreme Court February 3, 1984.