**John Joseph CAMILLO, Appellant,**

v.

**Donald WYRICK, Warden, Appellee.**

**No. 80–1472.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1980.

Decided Feb. 9, 1981.

---

David M. Lurie, Kansas City, Mo., for appellant.

John M. Morris, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before HEANEY, ROSS and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This case is an appeal of the denial of relief by the district court [1] sought pursuant to 28 U.S.C. § 2254. On August 10, 1967, petitioner-appellant Camillo pleaded guilty to a charge of first degree murder in connection with the shooting death of Friday Lane during a robbery. Camillo was sentenced to life imprisonment. In this appeal Camillo contends his plea was coerced because of his abuse in jail, his treatment at the mental hospital, and his counsel's advice while he awaited trial. Camillo argues that he was improperly denied a conditional writ of habeas corpus requiring the state of Missouri to release him from custody or retry him within sixty days. Camillo also contends that the district court erred in not holding an evidentiary hearing on his claim because he raised issues that could not be resolved solely on the state record. We affirm the district court.

---

1. The Honorable William R. Collinson, United States Senior District Judge for the Eastern and Western Districts of Missouri.

Camillo was arrested in Illinois on February 1, 1966, in connection with the shooting death of Friday Lane during a robbery. He was transferred in April 1966, to the Jasper County, Missouri, jail where he was confined to the juvenile section of the jail. Camillo remained in this area of the jail until July 12, except for three or four days spent in solitary confinement as a result of a disturbance in which he was involved. Shortly before July 12, Camillo threw his food on the floor, defecated in it, walked through it, and set fire to newspapers and bedding. As a result, he was placed in solitary confinement for seventy days. Camillo claims that while he was in solitary confinement he was fed mainly bread and water and he was not allowed clothes or any sanitary facilities except for a hole in the floor. He alleges he was threatened with death by deputies, guards, and officers when he was in the juvenile portion of the jail and while he was in solitary confinement. He also claims he was beaten, sometimes with chains, while he was in solitary confinement.

On September 20, 1966, Camillo was transferred to a state mental hospital. Among other treatments in the hospital, Camillo received thorazine which, he claims, may have distorted his judgment. He remained in the hospital until January 10, 1967. Upon his return to the county jail, he received no further harsh treatment, but Camillo complains that he heard threatening voices emanating from the air vents. He does not know the source of these voices or whether they actually existed. Until his trial he remained in isolation in the jail, but not solitary confinement.

Camillo states that his appointed counsel warned him prior to trial that it would be impossible to obtain a fair trial because of the popularity of the man he allegedly killed. Also, because of a procedural problem, counsel advised the case could not be moved to another venue.

On August 10, 1967, while represented by three attorneys and after thorough questioning by the judge regarding the voluntariness of his plea, Camillo entered a plea of guilty and received life imprisonment. Camillo appeared to be grateful for not receiving a death sentence. He thanked the judge for sparing his life and his defense counsel for helping him avoid the death sentence.

Five years later, in 1972, Camillo filed a state 27.26 motion [2] to vacate his judgment of conviction of murder and sentence of life imprisonment on the grounds that (1) his 1967 guilty plea was a product of coercion, (2) that he did not knowingly waive his federal constitutional rights, (3) that he did not have effective assistance of counsel, and (4) that he was incompetent at the time he entered his guilty plea. After a full evidentiary hearing, the state trial court issued a memorandum opinion dismissing Camillo's 27.26 motion. Camillo appealed the trial court's decision on the ground that the 1967 plea was a product of coercion. The Missouri Court of Appeals sustained the trial court's denial of Camillo's claim. *Camillo v. State*, 555 S.W.2d 386 (Mo.App.1977).

Thereafter Camillo filed his petition for a writ of habeas corpus in the federal district court raising the same grounds raised in his original state 27.26 motion and raising the additional ground that he was denied effective assistance of counsel during the appeal of his 27.26 motion. The district court, after considering the record of the state court's proceedings and briefs of the parties, denied Camillo's petition for a writ of habeas corpus on April 1, 1980.

In substance, the district court found that the state trial judge's findings of fact were supported by the record and he correctly applied the law to the facts. In addition, the court found that none of the defects listed in 28 U.S.C. § 2254(d)(1)–(8) were present in the state court proceeding.

The district court further found that *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), required dismissal of the three claims raised in Camil-

---

**2.** Mo.Sup.Ct.R. 27.26.

lo's petition that were also raised in the original 27.26 proceeding, but which were abandoned on appeal to the Missouri Court of Appeals. *Camillo v. State, supra,* 555 S.W.2d 386. The remaining claim, based on ineffective assistance of counsel during the appeal of the denial of Camillo's 27.26 motion, was dismissed, *inter alia,* because Camillo had not presented this claim to the courts of the state of Missouri.

The basis of Camillo's appeal in this court is that his treatment in the jail before his hospitalization, the use of thorazine on him in the hospital, the voices he heard after his return to the jail, his placement in isolation upon his return, and his attorney's statement about the impossibility of receiving a fair trial, constituted coercion, making his plea involuntary. He asserts that these allegations provide grounds for vacating his guilty plea and granting him a new trial. He also contends that the district court erred in dismissing this claim without an evidentiary hearing because it could not be resolved solely on the evidence in the state record.

■ The state contends that the issue of whether an evidentiary hearing is justified need never be reached because the limitation of issues in our order granting a certificate of probable cause confined the issue to "the question of coerced [guilty plea]." We find the order does not bar consideration of the denial of the evidentiary hearing because the issue of the granting of the hearing and the issue of vacating the guilty plea are so interwoven that it is necessary to consider the denial of the evidentiary hearing when considering the request for vacating the guilty plea and granting a new trial.

■ Turning to the issue of whether the district court erred in denying appellant an evidentiary hearing, we note at the outset that an evidentiary hearing must be held if relevant facts are disputed and a fair evidentiary hearing was not granted in the state court. *Townsend v. Sain,* 372 U.S. 293, 312–18, 83 S.Ct. 745, 756–759, 9 L.Ed.2d 770 (1963). The state court evidentiary hearing comported with 28 U.S.C. § 2254(d).

The relevant facts are not in dispute. The only question is what conclusions can properly be drawn from the facts developed in the state hearing. *See Toler v. Wyrick,* 563 F.2d 372, 373 (8th Cir. 1977), *cert. denied,* 435 U.S. 907, 98 S.Ct. 1455, 55 L.Ed.2d 498 (1978).

■ In a case such as this which predates *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the standard for determining whether a plea is voluntary is that the voluntariness of the plea must be determinable from the totality of the circumstances. *Winford v. Swenson,* 517 F.2d 1114, 1117–19 (8th Cir.), *cert. denied,* 423 U.S. 1023, 96 S.Ct. 464, 46 L.Ed.2d 396 (1975). Therefore, in reviewing the district court's denial of the claim without an evidentiary hearing, we must determine whether the allegation of coercion is refuted by the totality of the circumstances as reflected in the record as a whole.

Camillo claims that his treatment in the jail, the threats made against him while in jail, the prescription of thorazine to him in hospital, his isolation upon return to the jail, the voices he heard before and after returning to the jail, and his counsel's statement that he could not obtain a fair trial for Camillo placed Camillo in such fear and disoriented him to such an extent that his plea was not voluntary. There is convincing evidence in the record to the contrary. As for the ill treatment of defendant prior to his hospitalization, appellant was not subjected to such treatment for almost a year prior to his plea. The state trial court found that "there was no mistreatment of [Camillo] either at the state hospital in Fulton from September 20, 1966 to January 10, 1967, or from such latter date until he plead guilty on August 10, 1967." The record supports this finding. This period provided sufficient time for the effect of the alleged coercion to abate. *See Flores v. Estelle,* 578 F.2d 80, 84–85 (5th Cir. 1978), *cert. denied,* 440 U.S. 923, 99 S.Ct. 1253, 59 L.Ed.2d 477 (1979).

■ For the first time, Camillo alleges on appeal that thorazine and hospitalization

had such an effect on him that it rendered him incompetent or his plea involuntary. In his appeal to the Missouri Court of Appeals, Camillo limited his appeal to the claim that his guilty plea was a product of coercion resulting from the treatment he received in the Jasper County jail prior to September 20, 1966. Because these claims were not raised in the state court, Camillo has failed to exhaust his state remedies and he cannot raise them for the first time on appeal. In any event, the state trial court, after examining all of Camillo's hospital records, found that "at the time the Movant entered his plea of guilty, he was capable of understanding the nature of the charges against him and of assisting counsel in his defense. * * * [N]o where does the evidence reflect that Movant was not competent at the time he entered his plea of guilty on August 10, 1967." We are satisfied from an examination of the record that these findings of fact are not clearly erroneous and no error of law appears.

We similarly reject Camillo's assertion that he was coerced after he returned to jail. Camillo contends his continued isolation and the voices he heard emanating from the air vents constituted such coercion. As previously indicated, the district court found that there was no mistreatment of Camillo after his return from the state hospital at Fulton. He was placed in a cell block, fed regular rations, and not placed in the hole. During none of Camillo's court appearances, with the exception of his appearance before Judge Teel on April 19, 1966, over a year prior to his plea, did he complain about his mistreatment. Likewise, counsel's advice does not provide a ground for relief because the mere choice of one severe penalty over another more severe penalty does not constitute coercion. *Brady v. United States,* 397 U.S. 742, 745–48, 90 S.Ct. 1463, 1467–68, 25 L.Ed.2d 747 (1970); *Toler v. Wyrick, supra,* 563 F.2d at 375. *See Brown v. Swenson,* 487 F.2d 1236, 1240 (8th Cir. 1973), *cert. denied,* 416 U.S. 944, 94 S.Ct. 1952, 40 L.Ed.2d 296 (1974). It

should be noted that at the time Camillo entered his guilty plea he was represented by three attorneys described by the court as "outstanding criminal lawyers."

■ There are several other facts that indicate the plea was not coerced. The record reveals that the state trial judge asked appellant prior to taking his guilty plea whether he was being coerced into entering such a plea.

[The Court:] You have not been subjected to any force [or] any threats or coercion in order to induce you to make a plea of guilty in this case, have you?

A. No, Your Honor, I haven't.

While such a reply does not establish voluntariness per se, *Fontaine v. United States,* 411 U.S. 213, 215, 93 S.Ct. 1461, 1462, 36 L.Ed.2d 169 (1973), it does provide persuasive evidence of voluntariness. *United States v. Bambulas,* 571 F.2d 525, 526 (10th Cir. 1978); *see Toler v. Wyrick, supra,* 563 F.2d at 374–75.

Camillo's statements and actions made at the same time and after he entered his guilty plea show a lack of coercion. For example, his statements in court indicated that he was unaware he would receive life imprisonment instead of death if he pleaded guilty. He thanked the judge for indicating that he would impose life imprisonment instead of death. The petitioner said:

If you were to give me this life sentence, of course I'd appreciate it from the bottom of my heart, but I must tell you this, Your Honor, that physically you had me locked up, but mentally I believe I've paid for what I did to Friday Lane every night before I go to bed because I live through it every night. I haven't missed a night yet. That's all I have to say.

He also expressed his appreciation to his defense counsel for helping him avoid the death sentence. We also note Camillo waited five years to bring this action. This delay tends to indicate Camillo did not believe the alleged coercion existed at the time the plea was entered.[3] *See Johnson v.*

3. It should also be noted that appellant complained of his conditions in jail to a magistrate on April 19, 1966, prior to his removal to Ful-

ton. This would also tend to show appellant was not afraid of his jailers and the courts as he now alleges.

*United States,* 539 F.2d 1241, 1244–45 (9th Cir. 1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 228 (1977).

In summary, the state trial court found and concluded:

> [E]ven assuming that mistreatment occurred; that threats were made, and that force was used beyond that which was reasonably necessary to subdue Movant when he initially became violent after his return to Jasper County, this Court finds that there is absolutely no evidence to indicate any such type of mistreatment from the date of his admission to the State Hospital at Fulton, Missouri, on September 20, 1966, to the date of his plea of guilty before Judge Watson on August 10, 1967, a period of nearly eleven months.

> The Court concludes that, since Movant made no complaint about treatment or jail conditions to the sentencing judge; that since his original placement in solitary was for disciplinary purposes; that this motion was not filed until several years after his original sentence was given, his plea was not procured through coercion and duress but was, in fact, voluntary.

> Movant, at the time of his plea, knew the nature of the charge, the nature of the proceedings at the time he entered his plea, the range of punishment, and the plea was not the product of physical abuse or threats.

(citations omitted). After reviewing the record, it is our view the record supports the above findings and conclusions.

In conclusion, we note that the present case conforms with the standard established in *Winford v. Swenson, supra,* 517 F.2d at 1117–18:

> This pre-*Boykin* test does not require a record affirmatively showing that the trial judge gave the defendant specific procedural warnings before accepting the plea but only that the record contain

facts demonstrating the voluntary and intelligent nature of the plea. *Brown v. Swenson, supra.* Indeed, the Supreme Court has made it clear that a counseled guilty plea made by a competent defendant aware of the nature of the charge against him and induced by his desire to limit the possible penalty will not be set aside simply because the defendant later learns of constitutional rights which he did not know at the time the plea was entered. * * * A guilty plea entered with the assistance of counsel is presumptively valid.

(citations omitted). While we recognize that appellant does not need to prove his allegation in order to obtain an evidentiary hearing, the district court did not err in concluding that the allegations could be fully resolved on the basis of the state record. We find no error in the district court's denial of relief.

Affirmed.