[No. 49274–3.   En Banc.   December 8, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. DANIEL W. FREDERICK, *Petitioner.*

*Raymond H. Thoenig* of *Washington Appellate Defender Association,* for petitioner.

*David S. McEachran, Prosecuting Attorney,* and *Martha V. Gross, Deputy,* for respondent.

UTTER, J.—Defendant Daniel Frederick appeals a habitual offender finding against him, assigning error to the trial court's refusal to dismiss the proceeding. He claims that both of the prior felony convictions relied upon by the State were insufficient to support a habitual offender finding, one because coercion by a private party rendered the underlying guilty plea constitutionally invalid and one because the State failed to prove it would be a felony under present law. We reject Mr. Frederick's claim that outright dismissal was warranted but hold that the trial court erred in going further and completely excluding his proffered evidence of nongovernmental coercion. We therefore remand for a new trial.

On October 14, 1980, Mr. Frederick was found guilty of first degree robbery. The State then filed a supplemental information alleging Mr. Frederick to be a habitual offender. The supplemental information alleged two prior convictions; namely, a conviction of grand larceny on May 7, 1973, and convictions of first degree robbery and first degree kidnapping on November 12, 1976. The latter two convictions, of course, must be treated as one for purposes of the habitual offender statute. *See State v. Rinier,* 93 Wn.2d 309, 314, 609 P.2d 1358 (1980).

Prior to trial of the habitual offender charge, Mr. Frederick made several motions. First, he sought to exclude evidence of the 1976 convictions on the ground that they were based on an involuntary guilty plea. Second, he sought to exclude evidence of the 1973 grand larceny conviction on the ground that the former grand larceny statute, which made felonious all larcenies of property exceeding $75 in value, included acts which were no longer felonies in Washington. Finally, Mr. Frederick sought dismissal of the

habitual offender information if either of his first two motions were granted, since all of the convictions were necessary to prove habitual offender status.

The trial court denied the motion to grant an outright dismissal of the habitual offender information but reserved judgment on the question of whether Mr. Frederick could present his proffered evidence regarding the voluntariness of the 1976 guilty plea to the jury. That evidence consisted largely of the testimony of both himself and one Joe Tharp, a former cellmate, to the effect that Mr. Frederick's codefendant in the 1976 case had threatened to kill Mr. Frederick if he did not plead guilty.

On the day of trial, the court ruled that Mr. Frederick's proffered evidence should not be considered. In making its ruling, the court emphasized the complete lack of any State involvement in the threats against Mr. Frederick.

> Mr. Frederick did not then and does not now claim that anyone acting for the State attempted to exert any improper influence or was even aware of his claimed motivation for the plea entered into in open court after full advice of rights and consequences and the expressed denial of any threats.

Report of Proceedings, at 77. The court also noted that it had reviewed a Court of Appeals file for an earlier personal restraint petition based on the same claim and evidence and that that petition had been dismissed as frivolous on its face.

The State then presented its case and Mr. Frederick chose not to put on any evidence. The jury returned a verdict finding Mr. Frederick to be a habitual offender and judgment was so entered. On appeal, the Court of Appeals affirmed. *State v. Frederick*, 32 Wn. App. 624, 648 P.2d 925 (1982). We granted review and now reverse.

I

A

In upholding the trial court's exclusion of Mr. Frederick's evidence of his codefendant's threats, the Court of Appeals did not reach the question of the effect of nongovernmental

coercion. Instead, it held more generally that extrinsic evidence is never admissible to prove the constitutional invalidity of a guilty plea entered after 1976. *State v. Frederick, supra* at 629. In doing so, it relied upon *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976) in which we held that our CrR 4.2 required a showing *on the record* that a guilty plea was voluntary. *Frederick,* at 629; *see Wood,* at 511. For two reasons, the Court of Appeals reliance on *Wood* was misplaced.

■ The first of these reasons is that *Wood* places limitations solely on the State. CrR 4.2 and our holding in *Wood* must be limited by their purpose. That purpose is to ensure protection of *defendants'* rights by making the constitutional validity of guilty pleas more certain. *Wood,* at 511–12. To apply the limitation announced in *Wood* to defendants as well as the State would have the perverse effect of transforming a mechanism intended to protect constitutional rights into one which makes them more difficult to vindicate. The federal courts have consistently held that, while a record demonstrating a plea's facial validity is strong evidence of constitutional validity, it is not conclusive. *See Blackledge v. Allison,* 431 U.S. 63, 75, 52 L. Ed. 2d 136, 97 S. Ct. 1621 (1977); *Fontaine v. United States,* 411 U.S. 213, 214–15, 36 L. Ed. 2d 169, 93 S. Ct. 1461 (1973) (per curiam); *Camillo v. Wyrick,* 640 F.2d 931, 935 (8th Cir. 1981).

Even if *Wood* did apply equally to defendants and the State, it is inapplicable in the present case. We emphasized in *Wood* that the exclusion of extrinsic evidence of constitutional validity is mandated not by constitutional requirements but by court rule. *State v. Chervenell,* 99 Wn.2d 309, 314, 662 P.2d 836 (1983); *see Wood,* at 506–11. Yet in a habitual offender proceeding it is the renewed violation of *constitutional* rights which is of concern. *See Chervenell,* at 314; *State v. Holsworth,* 93 Wn.2d 148, 154–55, 156, 157, 607 P.2d 845 (1980). The additional court rule requirements recognized in *Wood* apply only on direct appeal and thus do not bar the use of extrinsic evidence in a habitual

offender proceeding.[1] *See Chervenell,* at 514; *cf. In re Keene,* 95 Wn.2d 203, 206, 622 P.2d 360 (1980) (*Wood* requirement of direct inquiry to ascertain that plea is intelligent and voluntary does not apply to collateral attack in which only constitutional error may be raised). This distinction mirrors that drawn by the federal courts in strictly applying Federal Rule of Criminal Procedure 11, upon which our CrR 4.2 is modeled (*Wood,* at 509–10), on direct appeal but not to petitions for habeas corpus where only constitutional error may be raised.[2] *Compare McCarthy v. United States,* 394 U.S. 459, 471–72, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1969) *with United States v. Timmreck,* 441 U.S. 780, 783–84, 60 L. Ed. 2d 634, 99 S. Ct. 2085 (1979).

## B

Nonetheless, the State contends, and the trial court agreed, that nongovernmental coercion of which neither the State nor the court is aware does not render a plea involuntary in the constitutional sense. The State points out that the mere presence of unpalatable alternatives does not render a plea involuntary. *See State v. Butler,* 17 Wn. App. 666, 672, 564 P.2d 828 (1977). For example, entry of a guilty plea in return for dismissal of other charges or a

---

[1]Our past decisions have concededly created some confusion and not been entirely consistent in their analysis, though their results are consistent with our analysis today. *See, e.g., In re Keene,* 95 Wn.2d 203, 205–06, 209–12, 622 P.2d 360 (1980) (noting *Wood* not applicable in personal restraint petition because not constitutional, but then seemingly applying CrR 4.2(c) and finding it satisfied); *State v. Rinier,* 93 Wn.2d 309, 315–16, 609 P.2d 1358 (1980) (seemingly applying *Wood* in habitual offender proceeding, but no extrinsic evidence offered in any event). Indeed, *Wood* itself was a habeas corpus case, though we held there that the defendant had not preserved the question of compliance with CrR 4.2. *Wood,* at 515. *See also In re Vensel,* 88 Wn.2d 552, 555–56, 564 P.2d 326 (1977) (personal restraint petition case extending *Wood* requirements to justice courts but making rule prospective only and allowing introduction of extrinsic evidence on remand of the case at bar).

[2]A challenge in a habitual offender proceeding to the validity of a prior guilty plea is not a collateral attack. *Holsworth,* at 154. Such a challenge does bear some resemblance to a petition for habeas corpus, however, in that, as noted above, it may raise only constitutional error.

more lenient sentence recommendation does not per se render a plea involuntary. *E.g., Brady v. United States,* 397 U.S. 742, 753, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970). This is true even where the plea is entered in return for a dismissal of charges against another. *State v. Cameron,* 30 Wn. App. 229, 231, 633 P.2d 901 (1981) and cases cited therein.

█ Such cases are distinguishable from the case at bar, however. In *Brady v. United States, supra,* the Supreme Court expressly distinguished plea bargaining pressures from threatened physical harm (*Brady,* at 750) and premised its decision in large part on the legal system's legitimate need for plea bargaining. Moreover, we have recognized that even plea bargaining pressures may, in particular circumstances, render a plea involuntary. *See, e.g., State v. Swindell,* 93 Wn.2d 192, 198, 607 P.2d 852 (1980) (threats of additional charges made to defendant in absence of counsel rendered plea involuntary); *cf. State v. Cameron, supra* at 231 (noting special care which must be taken to assure voluntariness when plea is entered in return for dismissal of charges against another).

While the Court of Appeals stated in *State v. Butler, supra,* that "[t]he first and foremost question is the involvement, if any, of the State" (*Butler,* at 673), this language must be read in light of its facts. The question there was whether a threat had actually been made or whether it existed only in the mind of the defendant. *See Butler,* at 673–74. There was no threat actually made by a private party.

We hold that coercion may render a guilty plea involuntary, irrespective of the State's involvement. While prevention of governmental misconduct is certainly a weighty concern, it is merely one means of advancing the most basic goal of our criminal justice system, protection of the innocent by assuring them a fair trial. To hold one in prison who, through no real choice of his or her own, has been denied a fair trial, indeed denied *any trial at all,* strikes us as the ultimate in injustice. The injustice lies not in the

taint on our legal system, but in the more basic wrong of incarcerating one who because of illegitimate threats has been denied any opportunity to prove his or her innocence.

The cases which have considered the issue are in accord with our view. *See United States v. Cammisano,* 599 F.2d 851, 856–57 (8th Cir. 1979) (familial coercion); *United States v. Colson,* 230 F. Supp. 953, 960 (S.D.N.Y. 1964) (anonymous threats of harm to defendant's family); *State v. Hill,* 118 Ariz. 157, 159, 575 P.2d 356 (Ct. App. 1978) (anonymous threats). Especially striking are those cases in which a defendant's plea was the product of a wild lynch mob figuratively if not literally banging at the door. *See Nickels v. State,* 86 Fla. 208, 234–35, 98 So. 497, 502, 99 So. 121 (1923) (per curiam on rehearing); *State v. Poglianich,* 43 Idaho 409, 417, 424, 252 P. 177 (1927); *Little v. Commonwealth,* 142 Ky. 92, 94–95, 133 S.W. 1149 (1911). We are unwilling to make our criminal justice system a party, knowing or unknowing, to such mob hysteria.

We also reject the State's contention that a defendant's denial of improper influence in open court precludes him or her from claiming coercion at some later time. The federal courts have clearly held that such a denial, while highly persuasive, is not *conclusive* evidence that a plea is voluntary. *See Blackledge v. Allison, supra* at 75; *Camillo v. Wyrick, supra* at 935. While society's interest in the finality of judgments is generally determinative, it must give way in circumstances such as these.[3] *Cf. In re Hews,* 99 Wn.2d 80,

---

[3]The State's argument is strangely reminiscent of Doc Daneeka's explanation of mental illness discharges in the novel *Catch–22.*

Yossarian looked at him soberly and tried another approach. "Is Orr crazy?"

"He sure is," Doc Daneeka said.

"Can you ground him?"

"I sure can. But first he has to ask me to. That's part of the rule."

"Then why doesn't he ask you to?"

"Because he's crazy," Doc Daneeka said. "He has to be crazy to keep flying combat missions after all the close calls he's had. Sure, I can ground Orr. But first he has to ask me to."

"That's all he has to do to be grounded?"

"That's all. Let him ask me."

86–87, 88, 660 P.2d 263 (1983) (prejudicial constitutional error may be raised in personal restraint petition).

We emphasize, however, that a defendant who seeks to later retract his admission of voluntariness will bear a heavy burden in trying to convince a court or jury that his admission in open court was coerced. The task will be especially difficult where there are other apparent reasons for pleading guilty, such as a generous plea bargain or virtually incontestable evidence of guilt. Nevertheless, a defendant should not be denied the opportunity to at least present evidence on the issue.

## C

■ In the present case, therefore, we take a middle ground. The trial court was correct in refusing to dismiss the habitual offender charge as a matter of law. To thus take the issue from the trier of fact would require that, even viewing the evidence in the light most favorable to the State, there be no substantial evidence from which a reasonable trier of fact would conclude the plea was voluntary. *See State v. Boyd,* 21 Wn. App. 465, 480, 586 P.2d 878 (1978), *rev'd on other grounds,* 93 Wn.2d 148, 607 P.2d 845 (1980). We doubt that a trial court would ever be justified in rejecting as a matter of law the strong prima facie evidence of voluntariness provided by a denial of coercion in open court at the time of the plea and agree that a dismissal was properly denied here.

Remand for a new trial is nonetheless necessary because

---

"And then you can ground him?" Yossarian asked.

"No. Then I can't ground him."

"You mean there's a catch?"

"Sure there's a catch," Doc Daneeka replied. "Catch–22. Anyone who wants to get out of combat duty isn't really crazy."

. . .

"That's some catch, that Catch–22," he observed.

"It's the best there is," Doc Daneeka agreed.

J. Heller, *Catch–22* 45–46 (1961). Here the State argues that one who fears that he will be killed if he pleads not guilty must inform the court, which will then presumably enter sua sponte the very not guilty plea which the defendant has been told will bring about his death.

the trial court erred in refusing to allow Mr. Frederick to present his evidence of coercion to the jury. That his burden of overcoming the State's prima facie case is heavy does not mean it cannot be met. Mr. Frederick should be given the chance to present his case to the jury.

The State makes much of another peculiar aspect of this case, that an identical claim was raised by Mr. Frederick in his prior personal restraint petition and rejected by the Court of Appeals. In re Frederick, cause 6333–I, June 23, 1978. The State argues, apparently relying on concepts of res judicata and collateral estoppel, that this prior litigation bars Mr. Frederick from raising his claim again.

█ This contention is not well taken. Even assuming principles of collateral estoppel might apply, we would be willing to apply them only if the Court of Appeals fully considered the evidence proffered by Mr. Frederick and applied the correct law. Here, the Court of Appeals simply issued a 1–sentence order denying Mr. Frederick's petition as "ha[ving] no basis either in fact or law and appear[ing] frivolous on its face". In re Frederick, *supra* (order denying personal restraint petition). No factual hearing pursuant to RAP 16.11 was ordered and the only evidence in the record before the Court of Appeals was the transcript of the guilty plea hearing, the information, the judgment and sentence, and a brief statement of facts generally outlining in only three sentences the facts to which Mr. Frederick and his witnesses would testify. The Court of Appeals thus could not possibly have fully considered the witness testimony Mr. Frederick sought to introduce in the present case.

Neither does the Court of Appeals appear to have applied the correct law. In light of the State's legal argument that nongovernmental coercion of which the court is unaware can *never* render a plea involuntary (see In re Frederick, *supra,* Brief of Respondent to personal restraint petition), the Court of Appeals summary disposition without hearing Mr. Frederick's evidence suggests that it simply applied the erroneous rule of law advocated by the State. Applying the correct rule of law would have necessitated a

factual hearing to develop and evaluate the proffered testimony as to threats by Mr. Frederick's codefendant. *See Wright v. Morris,* 85 Wn.2d 899, 904, 540 P.2d 893 (1975) (nonfrivolous petition grounded upon factual allegation, whose truth can be determined only by evidentiary hearing, must be remanded to superior court for hearing), cited in 3 L. Orland, Wash. Prac., Author's Comment to RAP 16.11 (1978).

## II

Mr. Frederick also contends that evidence of his 1973 grand larceny conviction should not have been admitted because not all felony grand larcenies under 1973 law are felonies now. In particular, he points out that the former law made all thefts of property exceeding $75 in value a felony while present law requires value in excess of $250. *Compare* Laws of 1909, ch. 249, § 353, as amended by Laws of 1955, ch. 97, § 1 *with* RCW 9A.56.030–.050. Thus, conduct sufficient to constitute grand larceny in 1973 would not necessarily constitute felony theft, or any other felony, today. Mr. Frederick then argues that this prevents use of his grand larceny conviction as a prior felony conviction in a habitual offender proceeding.

Most courts faced with such claims have taken the view that reclassification of a felony as a misdemeanor, or even complete decriminalization, is not pertinent. *See* Annot., *Determination of Character of Former Crime as a Felony, so as To Warrant Punishment of an Accused as a Second Offender,* 19 A.L.R.2d 227, 235 (1951) and cases cited therein. Our Court of Appeals has reached the same conclusion, at least with respect to changes in the value element of felony theft. *See State v. Ross,* 30 Wn. App. 324, 328, 634 P.2d 887 (1981); *State v. Castillo,* 23 Wn. App. 519, 521–22, 596 P.2d 312 (1979); *State v. Braxton,* 20 Wn. App. 489, 493, 580 P.2d 1116 (1978). This court, on the other hand, has described the proper test, albeit in dictum, as whether the prior convictions "constitute felonies in the state of Washington *now* and at the time the offenses were

committed." (Italics ours.) *State v. Jackovick*, 56 Wn.2d 915, 918, 355 P.2d 976 (1960).

The habitual offender statute is concededly ambiguous. It provides:

> Every person convicted in this state of . . . any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state *would* amount to a felony . . . shall be punished by imprisonment in the state penitentiary for life.

(Italics ours.) RCW 9.92.090. Mr. Frederick argues that the word "would" requires that the prior convictions be for offenses which are felonies under present law. The State argues that it is past status which is important. The dictionary provides support for both positions. *See Webster's Third New International Dictionary* 2638 (1971) (among other definitions, "would" defined as expressing either "futurity from a point of view in the past" or "probability or presumption in past or present time").

█ Whatever the most appropriate general rule, a question which we do not decide, we hold that the 1973 changes in the grand larceny statute should be ignored. Adjustments in the value element of an offense which simply reflect inflation indicate no change in society's view of the offense's severity. *See, e.g., State ex rel. Grandstaff v. Gore*, 182 Tenn. 94, 101, 184 S.W.2d 366 (1945) ("[i]t is common knowledge that one who steals goods of the value of $60 today secures less in actual value than like goods selling at $30 in years past"). Redefinition of the value element of a crime such as larceny or theft due solely to inflation should be ignored in determining whether the conduct which led to a past conviction would constitute a felony under present law. *Accord, State v. Castillo, supra* at 521 (noting that "[m]erely the amount necessary to constitute [felony theft] has changed because of inflation", not substance of the crime). We thus approve of the result reached by our Court of Appeals, but we do not consider the broader reach of its reasoning. Conviction of grand larceny under our former

statute does constitute a felony for habitual offender purposes.

The case is remanded for a new proceeding. At that proceeding, Mr. Frederick should be allowed to present evidence of his former codefendant's threats. The State should be allowed to introduce evidence of Mr. Frederick's prior grand larceny conviction, as long as it can show it differed from present felony theft only in a change of the value element.

WILLIAMS, C.J., and STAFFORD, DOLLIVER, and PEARSON, JJ., concur.

DIMMICK, J. (dissenting)—The majority summarily rejects what I perceive to be the real issue in this case— whether a defendant who has raised an issue in a prior personal restraint petition, considered by the Court of Appeals and the Supreme Court, may then raise the same issue concerning the same crime during a habitual criminal proceeding. There is no reason to reach the question of nongovernmental coercion and thus I express no opinion on the majority's discussion of that issue.

Additionally, I cannot fully agree with the majority's discussion in part II of its opinion.

## I

The chronology of the various court proceedings in this case is important to the first issue. The hearing at which petitioner pleaded guilty to robbery and kidnapping in 1976 lasted some 36 minutes and encompassed 25 pages of transcript. It included not only colloquy between counsel, judge and defendant, but also sworn testimony of the arresting officer. Never have I seen a more thorough proceeding for the taking of a plea. To summarize the events testified to, Frederick and one Griffin, in Frederick's car, with Frederick's father's 357 magnum robbed a gas station, took the gas station attendant hostage, drove him from the scene and released him unharmed. Frederick and Griffin were sighted near the scene of the crime within a short time

of the robbery. Later, after being advised of his rights, Frederick admitted the crime, recovered the gun for the officers and implicated Griffin. At the plea hearing Frederick admitted the officers' testimony to that effect was substantially correct and in his own words reiterated that he

> drove into the gas station, stopped, waited a few minutes, had the other guy get out with the gun waved around, got the money, got back in the car. We took off with the guy in back and let him out and that was it.

The court inquired at great length as to the voluntariness of the plea and as to any other comments Frederick had. He criticized his lawyer at that time, and expressed unhappiness with his lawyer's performance in that he made comments concerning the defendant he didn't appreciate. Frederick freely expressed his dissatisfaction to the judge concerning the judge's previous decision that his confession would be admissible against him at trial. He voiced complaints that that decision was predetermined or "fixed". Frederick did not voice any fear from any source at that time. He undoubtedly knew that conviction would be inevitable as a result of his confession being ruled admissible for trial. He was obviously making one final attempt to persuade the court to reconsider its decision regarding the admissibility of the confession. That attempt being unsuccessful, the defendant considered his alternatives and pleaded guilty.

When Frederick refused to testify against him, his codefendant, Griffin, was found not guilty. It was then that Frederick apparently felt he made a poor choice in pleading guilty. Because it was too late to file an appeal, he filed a personal restraint petition challenging the voluntariness of his plea. He alleged for the first time that his codefendant had coerced him into pleading guilty.

The Court of Appeals considered Frederick's assertion that he feared for his life and thus pleaded guilty, as well as the entire record surrounding the plea, and dismissed the petition as being frivolous. RAP 16.11(b). The facts of Mr.

Frederick's claim were in the petition and record. The majority totally ignores that in addition to this review by the Court of Appeals, our Supreme Court Commissioner reviewed the entire personal restraint petition and verbatim report of proceedings in upholding the dismissal. RAP 17.6. Furthermore, a department of this court, including the Chief Justice, reviewed the matter upholding the commissioner and the Court of Appeals in the disposition of the matter.

Frederick, in his attempt to have the trial court in this habitual criminal proceeding reconsider his coercion claim, presented a letter from his former attorney. The letter in pertinent part reads:

> As the case developed, the strongest evidence against my client was his own confession. I might add that he had told the investigating officers that he wanted to get caught. As it turns out, Mr. Frederick pleaded guilty to the charges, without any reductions or plea bargaining. Further, Mr. Frederick had told me right from the start that he did not want to testify against Mr. Griffin, because his life would be put in jeopardy when he was transferred to the Department of Institutions. *This was brought up in front of the Judge and the Court determined that there were no direct threats being made against Mr. Frederick, and therefore allowed his plea to be accepted.* As such, I do not believe that there is grounds [*sic*] for his plea to be withdrawn, but, I have always felt that he was intimidated by the prison system, especially since he had been there once before.

(Italics mine.) The attorney is now deceased, which is precisely one reason why finality of judgments is so important in these cases.

The trial court in the habitual criminal proceedings, in my opinion, did not *emphasize* the complete lack of any State involvement in the threats against Frederick in making his ruling. Majority opinion, at 553. The sentence quoted by the majority, at page 553, was taken out of an entire page of explanation given by the trial judge. He specifically included a detailed recital of the chronology of Frederick's prior personal restraint petition and concluded

that the present challenge to this 1976 conviction raises precisely the same issue previously considered and rejected by both the Court of Appeals and by the Supreme Court. The court went on to say, "not only is the same legal issue presented, but the record on this motion is also the same in all respects as the record considered by the Court of Appeals and the Supreme Court, and this court." Thereupon the court denied the motion to suppress the 1976 conviction. The prior decisions by the Court of Appeals and this court in Frederick's case appear to me to be the reason the trial judge refused to go into the matter further.

While we have recently relaxed our rules as to when and what issues may be raised when a defendant attacks a plea or conviction in a proceeding other than a direct appeal (*compare In re Myers,* 91 Wn.2d 120, 587 P.2d 532 (1978), *cert. denied,* 442 U.S. 912 (1979) *with In re Hews,* 99 Wn.2d 80, 660 P.2d 263 (1983)), this case goes one step beyond. This petitioner had his coercion claim fully considered and should not have another opportunity to make the same claim. The majority now makes a rule that because the appellate courts do not set a personal restraint petition for hearing but dismiss it as frivolous, a petitioner may in perpetuity resubmit the same claim. I would apply the principle of judicial finality in the instant case.

I am additionally concerned with the majority's lack of clear direction on a rehearing. While stating the defendant will bear a "heavy burden" (majority opinion, at 558), it fails to set out the standard. What is the standard? Beyond a reasonable doubt? Preponderance of evidence? The holding could be read in the manner urged by the petitioner that if a defendant produces some evidence, the burden shifts to the State again to prove voluntariness, thus requiring the State to produce extrinsic evidence contrary to the holding of *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976).

## II

The majority holds that "changes in the grand larceny

statute should be ignored" in habitual offender proceedings. Majority opinion, at 561. I agree with this narrow holding. The majority, however, goes beyond this holding in two ways. First, it only allows courts to ignore those "[a]djustments in the value element of an offense which *simply reflect inflation*". (Italics ours.) Majority opinion, at 561. The majority now apparently requires the prosecutor to prove that the Legislature made changes in applicable statutes due only to inflation with no direction as to how this is to be accomplished. The second way in which the court transgresses from its holding is to imply by torturing dictum in *State v. Jackovick,* 56 Wn.2d 915, 355 P.2d 976 (1960) that the general rule is different. That is, it implies that as to other crimes, it is only the present classification which is relevant. In *Jackovick* we were concerned with when an out–of–state conviction could be used as a basis for habitual criminal proceedings in Washington. We merely approved a conclusion made by the trial court in instructing the jury that the out–of–state conviction "'is now and was, at the time of the claimed conviction and at all times since, a felony in the State of Washington.'" *Jackovick,* at 918. The *Jackovick* court did not state the rule of law espoused by the majority. Additionally, courts of *all* jurisdictions (not most courts, as the majority relates) as well as all three divisions of our Court of Appeals have held that reclassification of a felony as a misdemeanor or even complete decriminalization is not pertinent. Annot., *Determination of Character of Former Crime as a Felony, so as To Warrant Punishment of an Accused as a Second Offender,* 19 A.L.R.2d 227 (1951); *State v. Ross,* 30 Wn. App. 324, 634 P.2d 887 (1981); *State v. Castillo,* 23 Wn. App. 519, 596 P.2d 312 (1979); *State v. Braxton,* 20 Wn. App. 489, 580 P.2d 1116 (1978). Thus, I cannot agree with any implication that this court will hold as a general rule that the present classification of a crime is relevant in habitual criminal proceedings.

The Legislature completely revised the criminal code in 1975. Requiring the prosecutor to go behind every felony

conviction to prove its present classification would be a burdensome and totally unnecessary task. I would hold that the only reasonable conclusion is that the classification of any offense, larceny or otherwise, at the time it was committed is controlling.

Accordingly, I would affirm the trial court.

ROSELLINI, BRACHTENBACH, and DORE, JJ., concur with DIMMICK, J.

Reconsideration denied February 29, 1984.