# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52460-1-II |
| Respondent, | |
| v. | |
| JAMISON PARKER NYLAND, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Jamison Parker Nyland appeals from the trial court's denial of his presentence motion to withdraw his guilty plea to one count of second degree kidnapping, two counts of second degree assault, one count of first degree burglary, three counts of first degree robbery, and one count of attempted robbery. He claims that he did not voluntarily enter his plea and that he agreed to the State's offer only because of pressure from his appointed attorney and because he was concerned his attorney was unprepared for trial. Nyland also challenges the imposition of certain legal financial obligations (LFOs).

We hold that the trial court did not abuse its discretion in denying Nyland's motion to withdraw his guilty plea. Nyland does not meet the heavy burden of demonstrating a manifest injustice because his unsworn written statement does not overcome the evidence of voluntariness established by his signed statement of defendant on plea of guilty and his verbal statements during

the plea colloquy. We also agree that all of the challenged LFOs from Nyland's judgment and sentence should be stricken. We affirm the denial of Nyland's motion to withdraw his guilty plea and remand to strike the challenged LFOs.

FACTS

I. BACKGROUND FACTS

On June 11, 2017, at about 1:00 AM, two individuals entered the home of Jacob and Jared Gratzer. One of the individuals was armed with a firearm. A friend of Jacob and Jared's,[1] Joseph Hopkins, was present in the home, along with Jacob and Jared's mother, who was asleep in a separate room. The first individual ordered Jacob, Jared, and Hopkins to get on the ground while the second individual entered the room with Jacob and Jared's mother. The mother was also ordered to lie on the floor. Jacob and Jared sold "pills" and the two individuals demanded to know where a safe, allegedly containing money, was located. Clerk's Papers (CP) at 3. The safe was removed and placed on the bed. The first individual began to gather gaming consoles while Jacob opened the safe.

After Jacob opened the safe, the first individual shot Jacob in the leg and then in the chest. Jared struggled with the suspects and was shot repeatedly. The suspects took the victims' cell phones and fled. In total, the suspects took two cell phones, a PS4 gaming console, an X-box console, and several video games.

Just over one week later, police learned that Nyland had pawned a PS4 gaming console with a serial number that matched the console taken from the Gratzers' home. Detectives reviewed

---

[1] Because the Gratzers share the same last name, we refer to them by their first name.

footage of the transaction and were able to identify Nyland. Detectives located Nyland and took him into custody on a warrant for an unrelated charge from King County.

After Nyland was advised of his *Miranda*[2] rights, Nyland admitted to pawning the PS4 but initially denied being involved in the robbery. A data search of Nyland's cell phone revealed that he had conducted Google searches for prices, buyers, and sellers for a PS4, and cell phones matching those taken from the Gratzer residence approximately one and a half hours after the robbery took place. When confronted with the results of the cell phone search, Nyland admitted that the two suspects forced him to drive to the Gratzer house, that he pointed out two surveillance cameras overlooking the front entrance, and that he informed the suspects that the Gratzers had a safe containing pills and cash. Nyland also admitted that he parked his car and waited for the suspects to return and that on their return, he was given the PS4, several cell phones, and gaming goggles. Nyland acknowledged that he pawned the PS4 knowing that it was stolen. Nyland eventually stipulated to admission of these statements.

## II. PRETRIAL PROCEEDINGS LEADING UP TO NYLAND'S GUILTY PLEA

Nyland was initially charged with one count of first degree robbery and one count of first degree burglary for his role in the events on June 11, 2017, each with firearm enhancements. Michael Underwood was appointed as Nyland's attorney. In the omnibus order, Underwood represented that he had met with Nyland about the case, that he had received a plea offer from the State, and that he had reviewed discovery and Nyland's criminal history. The State represented

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

that it disclosed all witnesses in discovery, and the defense stated that it had no witnesses of its own at that time. Nyland refused to sign the omnibus order.

Both parties requested a continuance in October 2017, the first of several such requests, because both needed additional time to conduct discovery and negotiations, as more discovery had just become available. Underwood had contacted the State to ask for medical records on the victims, and the State needed to conduct interviews with the victims. The State also anticipated adding several more class A felonies to Nyland's charges.

In December 2017, during a trial readiness hearing, Underwood informed the trial court that he would be ready for trial in January 2018, but that he was in the process of discussing the latest plea offer from the State with Nyland. The amended information would include additional counts, and Underwood had explained that he reviewed the amended information with Nyland and provided Nyland a copy.

The State filed an amended information on February 5, 2018. The State explained that it learned during discovery that in addition to the two victims initially identified, two others had also been involved in the home invasion. The State added two additional counts of first degree robbery and one count of attempted first degree robbery for a total of five charges (including the prior first degree robbery and first degree burglary charge). Every charge contained a firearm enhancement.

In its memorandum in support of its motion to amend the information, the State explained that it drafted an amended information on October, 26, 2017, but it delayed filing the amended information for some time to allow for negotiation with Nyland. The State expressed that once it filed the proposed amended information, it would no longer engage in plea negotiations with

Nyland. But "[b]y January 25, 2018 it became clear to the State that the defendant was not going to attempt to settle this matter." *Id.* at 29.

On the same date that the State filed its amended information and Nyland was rearraigned, Nyland asked the court to appoint new counsel. Nyland expressed frustration at the lack of communication between him and his counsel, explaining that he had met with him for less than an hour total in eight months. Nyland felt that Underwood believed he was guilty and had no intention of actually defending him.

In addition, Nyland was upset that while there was no communication between him and his attorney, the offers from the State had progressively worsened. Nyland contended that every offer Underwood showed him contained additional charges that had not been previously included. Although his scheduled trial date was approaching, Nyland stated that Underwood never discussed trial strategy or whether he should testify.

Underwood agreed that communication between the two of them had broken down and he told the trial court that Nyland was not happy with what he had been telling Nyland about the case. Underwood asked the trial court to appoint new counsel for Nyland. The State informed the court that contrary to Nyland's suggestion that Underwood was not working on the case, the prosecutor had met with Underwood at least a dozen times to negotiate Nyland's charges. The State further informed the trial court that Underwood had hired an investigator who interviewed several witnesses for the case. The trial court granted Nyland's request for new counsel.

Matthew McGowan was thereafter appointed to represent Nyland. McGowan sought a reduction of Nyland's bail, but the trial court denied the motion. McGowan also sought a competency evaluation for Nyland. Nyland was found competent to stand trial.

At a trial readiness hearing on June 29, 2018, McGowan informed the trial court that the defense was ready to proceed to trial on July 19, that the defense had no separate witnesses to call, and that discovery was complete to McGowan's knowledge. While the State had provided Nyland with several offers, he had declined them to that point. However, "[n]egotiations [were] still somewhat on the table." 8 Verbatim Report of Proceedings (VRP) (June 29, 2018) at 55.

### III. Guilty Plea

Nyland's case was assigned for trial on July 26, 2018. But before the proceedings began, the parties reached a settlement in the case. The State presented a seconded amended information that included charges of one count of second degree kidnapping and two counts of second degree assault, on top of the prior five charges that included one count of first degree burglary, three counts of first degree robbery, and one count of attempted robbery. In total, the second amended information contained eight charges, but none of the charges had firearm enhancements. The standard range sentence that Nyland faced for these charges was 129 to 171 months. The State explained that it would recommend the high end of the standard range, and McGowan stated that he would argue for the lower end. Because the firearm enhancements were dropped from this second amended information, Nyland faced 276 fewer months in prison than if he was convicted as charged on the amended information filed on February 5, 2018.

The trial court then went through the statement of defendant on plea of guilty with Nyland. Nyland affirmed that he had gone through the statement with McGowan. The trial court reviewed the constitutional rights that Nyland would give up in light of his plea as well as the standard range and maximum penalty Nyland faced for every charge. The court also read aloud Nyland's handwritten statement, in which he explained that while he did not agree that he was guilty of the

charged crimes, on reviewing the evidence, he believed there was sufficient evidence to find he was acting as an accomplice to the charged crimes. The trial court confirmed that those words were indeed Nyland's words.

The trial court proceeded to engage in a colloquy with Nyland, wherein he confirmed that (1) no one had made any threats or promises to him in exchange for his plea, (2) he agreed to this plea voluntarily, (3) he had no questions either for McGowan or for the court, and (4) he felt that he was entering the plea knowingly, intelligently, and voluntarily. On this colloquy and the defendant's statement, the trial court found that Nyland's plea was knowing, intelligent, and voluntary. The trial court accepted Nyland's plea of guilty to the eight charges alleged in the amended information.

IV. MOTION TO WITHDRAW GUILTY PLEA

On the day that Nyland was set to be sentenced, McGowan informed the court that Nyland wished to withdraw his plea, alleging, in part, ineffective assistance of counsel by McGowan. The trial court continued sentencing over to September 14, 2018, pending Nyland's motion to withdraw his plea.

A new attorney, Paula Olson, filed a motion to withdraw the guilty plea pursuant to CrR 4.2(f). In his motion, Nyland asserted that both attorneys, Underwood and McGowan, performed deficiently while representing him and but for this deficient performance, he would not have accepted the State's offer. As support for his assertion of deficient performance, Nyland presented his own unsworn statement. Nyland's statement described a lack of communication with his counsel, his perception that neither attorney intended to actually try the case or develop any trial strategy, and his recollection that both counsel repeatedly asserted that he would lose at trial and

7

would face a 40-year sentence. Nyland also alleged that Underwood had rushed him into stipulating to admissibility of his custodial statements. Finally, Nyland claimed that he informed McGowan that he wanted to enter an *Alford*[3] plea, but he believed, upon "review[ing] everything" later that day, that the plea he entered was not actually an *Alford* plea. CP at 100.

Following argument of counsel and a review of the record, the trial court denied Nyland's motion to withdraw his guilty plea. The court sentenced Nyland to 171 months confinement. Nyland appeals the denial of his motion to withdraw his plea.

## DISCUSSION

### I. CrR 4.2(f) Motion to Withdraw the Guilty Plea

Nyland claims that he presented sufficient evidence that his plea was coerced by his attorney and, relying on *State v. Frederick*, 100 Wn.2d 550, 557, 674 P.2d 136 (1983), *overruled on other grounds by Thompson v. Dep't of Licensing*, 138 Wn.2d 783, 982 P.2d 601 (1999), he argues that the trial court should have permitted him to withdraw his plea. Nyland contends that while his case was pending, both of his attorneys continually pressured him to plead guilty, explaining that a conviction was certain and that due to the firearm enhancements, he faced a sentence 276 months longer than if he were to accept the State's plea offer. Nyland asserts that he felt further pressure to acquiesce because he believed his attorney was not prepared to defend him at trial as the two had never discussed trial strategy and his attorney repeatedly opined that he would be convicted.

We hold that the written evidence and Nyland's verbal affirmations to the court at the time of his plea establish the plea's voluntariness, and his unsworn written statement, absent other

---

[3] *North Carolina v. Alford*, 400 U.S. 25, 38, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

evidence of coercion, is insufficient to meet Nyland's heavy burden to show a manifest injustice. Accordingly, the trial court did not abuse its discretion in denying Nyland's motion to withdraw his guilty plea.

A. LEGAL PRINCIPLES

Generally, we review a trial court's denial of a motion to withdraw a guilty plea for abuse of discretion. *State v. A.N.J.*, 168 Wn.2d 91, 106, 225 P.3d 956 (2010). The trial court must allow a defendant to withdraw a guilty plea where necessary to correct a manifest injustice. CrR 4.2(f). A manifest injustice is one that is "'obvious, directly observable, overt, not obscure.'" *State v. Branch*, 129 Wn.2d 635, 641, 919 P.2d 1228 (1996) (quoting *State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505 (1991)). The Supreme Court has recognized four nonexclusive circumstances that may demonstrate a manifest injustice: (1) a denial of effective assistance of counsel, (2) a lack of ratification of the plea by the defendant, (3) an involuntary plea, and (4) a failure by the State to uphold the agreement. *State v. Wakefield*, 130 Wn.2d 464, 472, 925 P.2d 183 (1996).

Nyland confines his claim to the third factor, arguing that his guilty plea must be reversed because it was involuntary. We determine the voluntariness of a plea by reviewing the relevant circumstances surrounding its acceptance. *State v. Williams*, 117 Wn. App. 390, 398, 71 P.3d 686 (2003). Where, as here, a defendant completes a written plea statement and admits to reading, understanding, and signing it, a strong presumption arises that the plea was voluntary. *State v. Smith*, 134 Wn.2d 849, 852, 953 P.2d 810 (1998). And where, as here, the trial court has also inquired into the voluntariness of the plea on the record, "'the presumption of voluntariness is well

9

nigh irrefutable.'" *State v. Davis*, 125 Wn. App. 59, 68, 104 P.3d 11 (2004) (quoting *State v. Perez*, 33 Wn. App. 258, 261-62, 654 P.2d 708 (1982)). These safeguards exist to protect a defendant's right before a trial court accepts the plea, but once these safeguards have been properly employed, a defendant carries a "demanding" burden when seeking to withdraw a guilty plea. *State v. DeClue*, 157 Wn. App. 787, 792, 239 P.3d 377 (2010).

Here, Nyland fails to meet his burden of demonstrating that his plea was involuntary based on his assertions that he felt coerced by his attorney and that he was concerned his attorney was unprepared for trial. A defendant's bare allegation of coercion in an affidavit, without substantiation in the record, is insufficient to overcome the strong presumption that his plea was voluntary. *State v. Osborne*, 102 Wn.2d 87, 97, 684 P.2d 683 (1984). Nyland signed a statement acknowledging that he entered this plea "freely and voluntarily." CP at 81. He added to his statement in his own handwriting that "[a]lthough [he does] not agree that [he is] guilty of the crimes charged, [he has] reviewed the evidence and agree[s] that the [S]tate has sufficient evidence to find that [he] was acting as an accomplice in the crimes charged." *Id*. During his plea colloquy with the trial court, the court asked whether Nyland was entering his plea voluntarily, and he agreed that he was. The court asked further whether Nyland felt that he was entering the plea "knowingly, intelligently, and voluntarily," and he again agreed that he was. VRP (July 26, 2018) at 24.

Nyland relies on *Frederick* in support of his claim that the trial court should have permitted him to withdraw his plea based on the evidence he presented that he was coerced into pleading guilty by his own attorney. In *Frederick*, the issue before the court was whether the trial court

improperly excluded evidence of coercion on the basis that the defendant alleged it was a codefendant, rather than a state actor, who coerced him into pleading guilty. 100 Wn.2d at 553. The court held that coercion need not come only from a State actor to undermine the voluntariness of a plea. *Id.* at 556. Nyland's reliance on *Frederick* is misplaced. The trial court did not deny Nyland the opportunity to present evidence of coercion by his attorney. Rather, the evidence he did present was not sufficient to persuade the court that his plea was involuntary.

The court in *Frederick* also emphasized that while a defendant who affirms voluntariness in open court is not later precluded from claiming coercion,

> a defendant who seeks to later retract his admission of voluntariness will bear a heavy burden in trying to convince a court or jury that his admission in open court was coerced. The task will be especially difficult where there are other apparent reasons for pleading guilty, such as a generous plea bargain or virtually incontestable evidence of guilt.

*Id.* at 558. Here, there are other apparent reasons for pleading guilty, such as the fact that Nyland faced an additional 276 months in prison due to the firearm enhancements that the State agreed to drop in exchange for Nyland's plea of guilty. Nyland also faced incontestable evidence after he stipulated to findings that pointed heavily toward his guilt, including that he pawned one of the items stolen during the robbery and burglary. Nyland also stipulated to the fact that a search of his phone revealed information that connected him to the robbery and burglary.

Where a defendant has affirmed both in writing and during the plea colloquy that the plea was voluntary and free of coercion, more is required to overcome this strong evidence of

voluntariness. *Osborne*, 102 Wn.2d at 97. Thus, we hold that Nyland failed to show a manifest injustice warranting withdrawal of his guilty plea.

## II. LFOs

Nyland challenges the trial court's imposition of a criminal filing fee and the interest accrual provision for his nonrestitution LFOs based on the fact that he is indigent. He further challenges the trial court's imposition of the deoxyribonucleic acid (DNA) collection fee because his DNA has previously been collected by the State pursuant to a felony conviction. The State concedes that the DNA collection fee and the criminal filing fee should be stricken and does not respond to Nyland's argument regarding the nonrestitution interest accrual provision. We accept the State's concession and remand to strike the DNA fee and the criminal filing fee. We also remand to strike the interest accrual provision on Nyland's nonrestitution LFOs because the judgment and sentence was entered on September 14, 2018, and RCW 10.82.090 prohibits the assessment of interest on nonrestitution LFOs for cases sentenced on or after June 7, 2018.

## CONCLUSION

We hold that Nyland failed to meet his burden of demonstrating that his plea was involuntary in light of his affirmations both in his statement of defendant on plea of guilty and his oral assertions to the trial court during the plea colloquy. Accordingly, the trial court did not abuse its discretion in denying his motion to withdraw the plea and we affirm. We remand this case to

the trial court to strike the criminal filing fee, the DNA collection fee, and the interest accrual provision for the nonrestitution LFOs from Nyland's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, J.

LEE, C.J.